ORAL ARGUMENT NOT YET SCHEDULED

No. 23-7076

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

AUGUST CABRERA, ET AL.,

*Plaintiff-Appellees*,

K.E.F.V., BY AND THROUGH HER NEXT FRIEND HORTENSE VICKERS,

*Plaintiff-Appellant*,

v.

ISLAMIC REPUBLIC OF IRAN,

*Defendant-Appellee*.

On Appeal from the United States District Court for the
District of Columbia, No. 1:19-cv-03835-JDB (Hon. John D. Bates)

## BRIEF FOR PLAINTIFF-APPELLANT
## K.E.F.V., BY AND THROUGH HER NEXT FRIEND,
## HORTENSE VICKERS

Ryan R. Sparacino
SPARACINO PLLC
1920 L Street, NW, Suite 835
Washington, D.C. 20036
(202) 629-3530
ryan.sparacino@sparacinopllc.com

Joshua D. Branson
Andrew E. Goldsmith
Grace W. Knofczynski
Jimmy A. Ruck
Chase H. Robinett
KELLOGG, HANSEN, TODD, FIGEL &
  FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
jbranson@kellogghansen.com
agoldsmith@kellogghansen.com
gknofczynski@kellogghansen.com
jruck@kellogghansen.com
crobinett@kellogghansen.com

*Counsel for Plaintiff-Appellant*

December 22, 2023

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Plaintiff-Appellant certifies as follows:

### A.    Parties and Amici

The Plaintiff-Appellant is K.E.F.V., by and through her next friend, Hortense Vickers.  Defendant-Appellee is the Islamic Republic of Iran.  The Islamic Republic of Iran has not entered an appearance in this case, either at the district court or here.

A list of all plaintiffs who appeared before the district court is included in Attachment A.  The list includes all plaintiffs whose claims were consolidated in *Cabrera, et al. v. Islamic Republic of Iran*.

No *amici* appeared in the district court and no *amici* have yet appeared in this Court.

### B.    Rulings Under Review

The Honorable John D. Bates issued the judgment under review on May 16, 2023.  *See* App.210 (Dkt. 138).  He issued a Memorandum Opinion explaining the bases for that judgment that same day.  *See* App.181 (Dkt. 137).  While the opinion has not been selected for publication, it may be found on Westlaw at 2023 WL 3496303.

ii

**C.     Related Cases**

This case has not previously been before this Court or any other court.

Counsel is unaware of any related cases pending in this Court or any other court.

## TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............ ii

TABLE OF AUTHORITIES ................................................................. vi

GLOSSARY OF ABBREVIATIONS .................................................... xii

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT .........................................................3

STATEMENT OF THE ISSUE ..............................................................3

STATUTORY PROVISIONS .................................................................3

STATEMENT OF THE CASE ................................................................3

    A.    Legal Background ................................................................3

    B.    Factual Background ..............................................................5

    C.    Procedural History ...............................................................7

SUMMARY OF ARGUMENT ..............................................................13

STANDARD OF REVIEW ..................................................................15

ARGUMENT ...................................................................................15

I.    K.E.F.V. SHOULD RECOVER SOLATIUM DAMAGES UNDER GENERAL PRINCIPLES OF TORT LAW ....................................................15

    A.    The FSIA's Private Right of Action Authorizes Solatium Damages Consistent With General Principles of Tort Law. ...............15

        1.    The Pass-Through Approach ....................................................15

        2.    The Private Right of Action ....................................................17

        3.    Solatium Damages Under the Private Right of Action .............18

iv

B. Common-Law Principles Allow Recovery for Torts Committed While a Plaintiff Was In Utero.............................................................21

    1. Wrongful-Death Claims..........................................................22

    2. Loss of Consortium.................................................................26

    3. General Tort-Law Principles....................................................28

C. The District Court Should Have Applied These Common-Law Principles. .........................................................................................29

II. THE DISTRICT COURT'S REASONING IS UNPERSUASIVE .............31

A. Concerns About an Unlimited Class of Plaintiffs Do Not Apply to K.E.F.V. ........................................................................................32

B. K.E.F.V. Can Recover for an Attack Directed at Her Father. ............37

C. K.E.F.V. is Similarly Situated to Infants Who Recover Solatium......39

CONCLUSION ......................................................................................................44

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ATTACHMENT

ADDENDUM

# TABLE OF AUTHORITIES[*]

Page

## CASES

*Ackley v. Islamic Republic of Iran*,
    2022 WL 3354720 (D.D.C. Aug. 12, 2022)................................................. 41

*Anderson v. Islamic Republic of Iran*,
    90 F. Supp. 2d 107 (D.D.C. 2000)................................................. 32

*Angelini v. OMD Corp.*,
    575 N.E.2d 41 (Mass. 1991)............................................. 28, 29, 35

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)........................................................... 3

*Baker v. Socialist People's Libyan Arab Jamahirya*,
    775 F. Supp. 2d 48 (D.D.C. 2011)................................................. 33

*Bathiard v. Islamic Republic of Iran*,
    2020 WL 1975672 (D.D.C. Apr. 24, 2020)........................................... 42, 44

*Ben-Rafael v. Islamic Republic of Iran*,
    540 F. Supp. 2d 39 (D.D.C. 2008)................................................. 41

*Bettis v. Islamic Republic of Iran*,
    315 F.3d 325 (D.C. Cir. 2003)............................................. 15, 18, 20, 30, 38

*Boise Payette Lumber Co. v. Larsen*,
    214 F.2d 373 (9th Cir. 1954) ....................................................... 24

*Boland v. Est. of Smith*,
    237 A.3d 723 (Vt. 2020)............................................................ 25

*Bonbrest v. Kotz*,
    65 F. Supp. 138 (D.D.C. 1946)..................................................... 28

---

[*] Authorities principally relied upon are designated by an asterisk (∗).

*Bonnarens v. Lead Belt Ry. Co.*,
    273 S.W. 1043 (Mo. 1925) ............................................................ 24

\*Chick Transit Corp. v. Edenton*,
    196 S.E. 648 (Va. 1938) ......................................................... 24, 30

*Crumpton v. Gates*,
    947 F.2d 1418 (9th Cir. 1991) .................................................. 28

*Davis v. Islamic Republic of Iran*,
    882 F. Supp. 2d 7 (D.D.C. 2012) ..................................... 12, 34, 36

*Day v. Nationwide Mut. Ins. Co.*,
    328 So. 2d 560 (Fla. Dist. Ct. App. 1976) ................................. 29

*Dep't of Pub. Welfare v. Schultz*,
    855 A.2d 753 (Pa. 2004) ............................................................ 25

*deVente v. Flora*,
    684 S.E.2d 91 (Ga. Ct. App. 2009) ........................................... 26

*Ellis v. Humana of Florida, Inc.*,
    569 So. 2d 827 (Fla. Dist. Ct. App. 1990) ................................. 25

*Est. of Brown v. Islamic Republic of Iran*,
    872 F. Supp. 2d 37 (D.D.C. 2012) ............................................ 35

*Est. of Gray ex rel. Gray v. Baldi*,
    880 N.W.2d 451 (Iowa 2016) .............................................. 27, 36

*Est. of Heiser v. Islamic Republic of Iran*,
    659 F. Supp. 2d 20 (D.D.C. 2009) ....................... 18, 20, 21, 31, 38

    466 F. Supp. 2d 229 (D.D.C. 2006) ..................................... 16, 17

*Est. of Hirshfeld v. Islamic Republic of Iran*,
    330 F. Supp. 3d 107 (D.D.C. 2018) ...................................... 17, 21

*Fizer v. Davis*,
    706 So. 2d 244 (Miss. 1998) ..................................................... 25

\*Flatow v. Islamic Republic of Iran*,
    999 F. Supp. 1 (D.D.C. 1998) .................. 19, 22, 24, 26, 31, 40, 41, 42

*Force v. Islamic Republic of Iran*,
 617 F. Supp. 3d 20 (D.D.C. 2022).................................................... 35

*\*Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs.*,
 892 F.3d 348 (D.C. Cir. 2018)................................................ 5, 17, 18, 19, 20

*Goldstein v. Islamic Republic of Iran*,
 383 F. Supp. 3d 15 (D.D.C. 2019)............................................ 11, 12, 13, 43

*GSS Grp. Ltd v. Nat'l Port Auth.*,
 680 F.3d 805 (D.C. Cir. 2012)......................................................... 8

*Herndon v. St. Louis & S.F. R.R. Co.*,
 128 P. 727 (Okla. 1912)................................................................ 23

*Holland v. Islamic Republic of Iran*,
 496 F. Supp. 2d 1 (D.D.C. 2005)..................................................... 41

*Indiana ex rel. Niece v. Soale*,
 74 N.E. 1111 (Ind. Ct. App. 1905) ................................................ 23

*Karcher v. Islamic Republic of Iran*,
 396 F. Supp. 3d 12 (D.D.C. 2019)..................................................... 4

*Larusso v. Garner*,
 888 So. 2d 712 (Fla. Dist. Ct. App. 2004).................................... 29

*Marrero Artache v. Autoridad de Energia Electrica*,
 924 F. Supp. 346 (D.P.R. 1996) .............................................. 24, 25

*Mason v. Luther*,
 903 So. 2d 1145 (La. Ct. App. 2005) ........................................... 36

*Moradi v. Islamic Republic of Iran*,
 77 F. Supp. 3d 57 (D.D.C. 2015).................................................... 40

*Moragne v. States Marine Lines, Inc.*,
 398 U.S. 375 (1970)..................................................................... 22

*Murphy v. Islamic Republic of Iran*,
 740 F. Supp. 2d 51 (D.D.C. 2010)................................................. 39

*Nelson v. Galveston*,
    14 S.W. 1021 (Tex. 1890) ..................................................... 22, 23

*Onsongo v. Republic of Sudan*,
    60 F. Supp. 3d 144 (D.D.C. 2014) ................................................ 35

*Opati v. Republic of Sudan*,
    140 S. Ct. 1601 (2020) ............................................................. 4, 16

*Oveissi v. Islamic Republic of Iran*,
    768 F. Supp. 2d 16 (D.D.C. 2011) ................................................ 43

*Owens v. Republic of Sudan*:
    864 F.3d 751 (D.C. Cir. 2017) ................................. 4, 12, 16, 17, 35

    826 F. Supp. 2d 128 (D.D.C. 2011) .............................................. 18

*Peterson v. Islamic Republic of Iran*,
    515 F. Supp. 2d 25 (D.D.C. 2007) ................................................ 10

*Quinlen v. Welch*,
    23 N.Y.S. 963 (N.Y. Gen. Term 1893),
    *aff'd on other grounds*, 36 N.E. 12 (N.Y. 1894) ......................... 23

*Quinn v. Pennsylvania, Dep't of Transp.*,
    719 A.2d 1105 (Pa. Commw. Ct. 1998) ...................................... 25

*Salazar v. Islamic Republic of Iran*,
    370 F. Supp. 2d 105 (D.D.C. 2005) ................................. 21, 39, 41

*Schooley v. Islamic Republic of Iran*,
    2019 WL 2717888 (D.D.C. June 27, 2019) ................................. 41

*Selig v. Islamic Republic of Iran*,
    573 F. Supp. 3d 40 (D.D.C. 2021) ........................................ 38, 40

*Smith ex rel. Smith v. Islamic Emirate of Afghanistan*,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003), *as amended*,
    2003 WL 23324214 (S.D.N.Y. May 19, 2003) ........................... 33

*Spaulding v. Islamic Republic of Iran*,
    2018 WL 3716881 (N.D. Ohio Aug. 3, 2018) ............................ 41

*State Farm Mut. Auto. Ins. Co. v. Luebbers*,
   119 P.3d 169 (N.M. Ct. App. 2005) .......................................... 26, 27, 42, 43

*Taitt v. Islamic Republic of Iran*,
   2023 WL 2536518 (D.D.C. Mar. 16, 2023) .................................. 41

*Valore v. Islamic Republic of Iran*,
   700 F. Supp. 2d 52 (D.D.C. 2010); .............................................. 38

*Wamai v. Republic of Sudan*,
   60 F. Supp. 3d 84 (D.D.C. 2014)..................................... 12, 34, 35

*Wultz v. Islamic Republic of Iran*,
   864 F. Supp. 2d 24 (D.D.C. 2012)................................................ 34

**STATUTES**

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.*:

   § 1605A............................................................................... 3, 19

   § 1605A(a)(1) ....................................................................... 4, 9

   § 1605A(a)(2) ......................................................................... 4

   § 1605A(a)(2)(A) .................................................................... 9

   § 1605A(c) ........................................... 1, 2, 3, 4, 5, 8, 11, 13, 15, 17, 18, 20,
                                                    22, 30, 31, 33, 34, 37, 42

28 U.S.C. § 1291 ......................................................................... 3

28 U.S.C. § 1330(a) .................................................................... 3

42 U.S.C. § 1983 ....................................................................... 28

Fla. Stat. § 768.21 (1990)........................................................... 25

**RULE**

Fed. R. Civ. P. 54(b) ................................................................... 3

## OTHER AUTHORITIES

154 Cong. Rec. (daily ed. Jan. 22, 2008), 2008 WL 182982

S54 ................................................................................................ 30

S55 ................................................................................................ 17

Report and Recommendation, *Lee v. Islamic Republic of Iran*,
2022 WL 20444119 (D.D.C. Apr. 11, 2022),
*adopted by* 2023 WL 4891534 (D.D.C. June 29, 2023) ............................... 40

Report of Special Master Pursuant to Order of Reference Concerning
Count CXCC, *Davis v. Islamic Republic of Iran*, No. 1:07-cv-01302
(D.D.C. Mar. 7, 2012), Dkt. 114 ................................................... 34

Report of Special Master Pursuant to Order of Reference Concerning
Count CXCVIII, *Davis v. Islamic Republic of Iran*, No. 1:07-cv-01302
(D.D.C. Mar. 7, 2012), Dkt. 116 ................................................... 34

Restatement (Second) of Torts:

(Am. L. Inst. 1965):

§ 46 ........................................................................... 20, 34, 37

§ 46(1) ....................................................................... 29, 37, 38

§ 46(2) ....................................................................... 20, 37, 38

§ 46(2)(a) ................................................................... 20, 21, 37

(Am. L. Inst. 1979):

§ 869 ....................................................................... 11, 28, 29, 33

John F. Wagner Jr., *Recovery of Damages for Loss of
Consortium Resulting from Death of Child — Modern Status*,
77 A.L.R. 4th 411 (1989) ............................................................. 26

# GLOSSARY OF ABBREVIATIONS

**FSIA**            Foreign Sovereign Immunities Act of 1976

# INTRODUCTION

K.E.F.V. is the twelve-year-old daughter of Senior Chief Petty Officer Kraig Vickers.  Two months before she was born, Taliban terrorists shot down her father's helicopter in Afghanistan, killing him and 37 other U.S. and Coalition service members.  The district court correctly held that Iran, a designated state sponsor of terrorism, provided material support for that attack.  And it correctly held that Iran's material support caused the death of everyone onboard and the emotional injuries of their immediate family members.  The court then awarded solatium — damages for emotional pain and suffering following an immediate family member's death — to Senior Chief Vickers' widow, two of his children, his parents, and his three siblings.  Thirty-four family members of other victims of the same attack also received solatium awards, including one victim's two-month-old daughter.  The court sustained all these solatium claims under the private right of action created by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A(c).

Yet the district court rejected K.E.F.V.'s solatium claim for the same attack that killed her father.  Overruling a Special Master's Report and Recommendation awarding K.E.F.V. solatium damages, the district court held that she lacked standing because she was an "after-born" plaintiff — part of a "potentially unlimited class" that "could remain open for decades after a terrorist attack."  No doubt, such limiting-principle concerns may justify preventing children conceived

*after* a terrorist attack from stating a claim. But those concerns do not apply to K.E.F.V., who was conceived seven months *before* the attack that killed her father. Indeed, a limited and readily discernible class of claimants exists: victims' immediate family members conceived before the terrorist attack. This line recognizes the suffering of in-utero plaintiffs when a terrorist attack kills or injures their immediate family member, without creating a potential stream of new plaintiffs for decades after an attack.

Allowing in-utero plaintiffs to recover is also well-established in the common law. As this Court has explained, the FSIA's private right of action incorporates general tort-law principles. The district court failed to apply those principles here. It did not consider the Restatement (Second) of Torts, which recognizes that children may bring claims for torts committed while they were in utero. Nor did it consider that state courts consistently allow in-utero children to recover damages for the death or injury of a parent. As those courts recognize, there is little-to-no difference between a child's suffering from losing a parent two months before birth versus two months after. Both children are deprived of their parent's love, guidance, and comfort for their formative years, even though they are unaware of the loss when it first occurs.

K.E.F.V. has a claim for solatium under 28 U.S.C. § 1605A(c), and the decision below should be reversed.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1330(a) because K.E.F.V. brings a claim against the Islamic Republic of Iran for which Iran is not entitled to immunity under 28 U.S.C. § 1605A.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.  The district court entered a final order dismissing K.E.F.V.'s claims on May 16, 2023.  *See* App.210 (Dkt. 138).  It entered final judgment under Federal Rule of Civil Procedure 54(b) because there was no just reason for delay.  App.213 (*Id.* at 4).  Other plaintiffs' claims are proceeding before the district court.  K.E.F.V. timely appealed on June 14, 2023. *See* App.215 (Dkt. 178).

## STATEMENT OF THE ISSUE

Whether plaintiffs who were in utero when a terrorist attack killed or injured their parent may bring a claim for solatium under 28 U.S.C. § 1605A(c).

## STATUTORY PROVISIONS

All pertinent statutes have been reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Legal Background

Although foreign states are generally immune from federal-court jurisdiction, the FSIA creates certain exceptions.  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).  The terrorism exception, 28 U.S.C. § 1605A, strips foreign sovereigns of immunity for claims of

3

"personal injur[ies] or death" that were "caused by" an "act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." *Id.* § 1605A(a)(1).

Once those jurisdiction-stripping elements are satisfied, three requirements remain for a court to hear claims under the terrorism exception: (1) the defendant was a designated state sponsor of terrorism; (2) the claimant or victim was — at the time of the attack — a U.S. national, a member of the armed forces, or a U.S. government employee or contractor; and (3) if the attack took place within the defendant's borders, the defendant received an opportunity to arbitrate the claims. *Id.* § 1605A(a)(2). The district court found all these elements satisfied here.

Section 1605A also creates a private right of action, *id.* § 1605A(c).[1] This provision allows U.S. nationals to bring claims against a state sponsor of terrorism when § 1605A(a) strips the state's sovereign immunity. "In other words, [§ 1605A(c)] creates a cause of action for the same conduct that gives rise to subject-matter jurisdiction under the terrorism exception to sovereign immunity." *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 59 (D.D.C. 2019). It extends to individuals physically injured and killed in terrorist attacks, as well as to

---

[1] Before Congress added the private right of action in § 1605A(c), plaintiffs had to state a claim "under some other source of law, including state law." *Owens v. Republic of Sudan*, 864 F.3d 751, 764 (D.C. Cir. 2017), *answering certified question*, 194 A.3d 38 (D.C. 2018), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020).

their immediate family members.  *See*, *e.g.*, *Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 359 (D.D.C. 2020).  Under this federal cause of action, "damages may include economic damages, solatium, pain and suffering, and punitive damages."  28 U.S.C. § 1605A(c).  Relevant here is solatium — traditionally "a compensatory damage which belongs to the individual heir personally for injury to the feelings and loss of decedent's comfort and society." *Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs.*, 892 F.3d 348, 356 (D.C. Cir. 2018).

The statute does not identify the elements of the private cause of action, but "courts are not authorized to craft a body of federal common law in deciding FSIA terrorism exception claims."  *Id.* at 353.  Instead, courts rely on "well-established statements of common law, found in state reporters, the Restatement of Torts, and other respected treatises, in determining damages under § 1605A(c)."  *Id.*; *see also In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 61 (D.D.C. 2009) (applying legal "principles that have been adopted by the majority of state jurisdictions").

### B.    Factual Background

K.E.F.V. is Senior Chief Petty Officer Kraig Vickers' daughter.  App.297 (Dkt. 116-4 at 77) (Special Master Stephen A. Saltzburg's Report and Recommendation (Nov. 1, 2022) ("Saltzburg Rep.")).  Senior Chief Vickers served

5

for many years as a Navy SEAL and was nearing the end of his military career in August 2011.  App.293 (*Id.* at 73); *see* App.96 (Dkt. 78 at 43).  He was looking forward to moving home to Hawaiʻi with his family, where they planned to stay permanently.  App.293 (Saltzburg Rep. at 73)*.*  He had an infectious smile and great love for life, and he was a dedicated husband and father.  *Id.*

K.E.F.V. is the youngest of Senior Chief Vickers' three biological children. App.297 (*Id.* at 77).  Senior Chief Vickers had a close relationship with his two older children, Kaiakakuʻuikalaʻiokealoha Noah Vickers and K.M.G.V., playing, singing songs, and watching movies with them.  App.295, 300 (*Id.* at 75, 80).  He enjoyed taking his children to the beach and teaching them to swim and surf.  *Id.* He was excited about K.E.F.V.'s upcoming birth and had imagined the relationship he would have with her.  App.297 (*Id.* at 77).

Senior Chief Vickers was serving in Afghanistan in August 2011 when his Navy SEAL team boarded a helicopter to capture a senior Taliban commander. App.96 (Dkt. 78 at 43).  As the helicopter neared the commander's last-known location, a Taliban terrorist shot down the helicopter with a rocket propelled grenade, killing everyone onboard.  App.97 (*Id.* at 44).  After a multi-day evidentiary hearing, the district court found that Iran provided material support for this and other Taliban attacks in Afghanistan.  App.98 (*Id.* at 45); *see* App.33-35.

6

K.E.F.V.'s mother was seven months pregnant when Senior Chief Vickers was killed. App.297 (Saltzburg Rep. at 77). Because of her husband's death, K.E.F.V.'s mother experienced significant emotional distress while pregnant. *Id.* When the military came to her home in Virginia to notify her about her husband's death, she went into shock and began wailing uncontrollably. App.296-297 (*Id.* at 76-77). She believes this stress physically affected K.E.F.V. while she was in utero. App.297 (*Id.* at 77). Indeed, K.E.F.V. suffered from colic for the first four months of her life. *Id.* K.E.F.V. also has suffered and continues to suffer from regular night terrors, which can occur several times a night. *Id.* Mrs. Vickers believes K.E.F.V. experiences these night terrors because of her father's death. *Id.* But most tragically, the terrorist attack deprived K.E.F.V. of her father's love, care, and guidance. The attack stole from her the chance to build a relationship with him. And unlike her older siblings, she does not even have memories of happy times spent together. *Id.* Although K.E.F.V. was born two months after her father died, she feels his absence. *Id.*

## C.    Procedural History

Plaintiffs below are 1,265 American service members and civilians, and their family members, who were killed or wounded in attacks by a Taliban-led terrorist syndicate in Afghanistan. Plaintiffs sued Iran under the FSIA's terrorism exception for providing material support for those attacks. The family-member

plaintiffs seek solatium for emotional injuries suffered as a result of their loved one's physical injuries or death.

K.E.F.V., by and through her mother, Hortense Vickers, brought a solatium claim under the private right of action at 28 U.S.C. § 1605A(c).[2]  After Plaintiffs served Iran with the complaint, Iran defaulted.  Plaintiffs' service establishes personal jurisdiction over Iran for K.E.F.V.'s claim, "so long as the Court has subject-matter jurisdiction."  App.126-127 (Dkt. 78 at 73-74) (explaining that "under the FSIA, 'subject matter jurisdiction plus service of process equals personal jurisdiction'" (quoting *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012))).

The district court held a live, three-day evidentiary hearing in October 2021.  Plaintiffs presented evidence about the Taliban-led syndicate in Afghanistan and Iran's material support for the syndicate's attacks.  App.54-55, 64, 72-73 (*Id.* at 1-2, 11, 19-20).  Plaintiffs also presented specific evidence supporting the court's subject-matter jurisdiction and Iran's liability for 11 "bellwether" attacks.  App.85-86 (*Id.* at 32-33).  One of the bellwether attacks killed Senior Chief Vickers.  App.96 (*Id.* at 43).  The district court also received damages evidence for four direct victims and their immediate family members.  App.54-53, 143 (*Id.* at 1-2, 90

---

[2] K.E.F.V. asserted her claim in the Second Amended Complaint, which Plaintiffs filed with the district court's leave on February 23, 2021, *see* App.30; App.49 (Dkt. 28).

n.32).  It referred the remaining bellwether plaintiffs' claims to Special Masters to make recommendations about eligibility and damages in the first instance.  App.55 (*Id.* at 2).

The district court held Iran liable for each of the bellwether attacks, including the attack that killed Senior Chief Vickers.  App.96-98 (*Id.* at 43-45).  It ruled that Iran provided "material support" for the Taliban's attack on his helicopter, which was an "extrajudicial killing" under 28 U.S.C. § 1605A(a)(1). App.129-137 (*Id.* at 76-84).  And it concluded that Iran's material support for the attack caused his death and inflicted emotional injuries on his family members. App.128-129, 139-143 (*Id.* at 75-76, 86-90).  As to the other requirements of § 1605A(a)(2)(A), the district court held that (1) Iran was a designated state sponsor of terrorism; (2) each victim was in the armed forces at the time of the attack; and (3) there was no obligation to offer to arbitrate because the attacks all took place in Afghanistan — not Iran.  App.128 (*Id.* at 75 n.26).

The district court also concluded that each plaintiff it considered stated a claim under the FSIA's private right of action.  App.143-147 (*Id.* at 90-94).  All were U.S. citizens.  And all stated claims under general tort-law principles.  *Id.* The immediate family-member plaintiffs recovered "solatium" damages, which compensate for "the mental anguish, bereavement, and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death,

as well as the harm caused by the loss of the decedent's society and comfort." App.129 (*Id.* at 76).

The district court then awarded damages and prejudgment interest to each plaintiff using the "*Peterson II* framework," which district courts in this Circuit often use to award damages to terrorist victims and their families. App.147-148, 157-156 (*Id.* at 94-95, 104-105) (citing *Peterson v. Islamic Republic of Iran* ("*Peterson II*"), 515 F. Supp. 2d 25, 52 (D.D.C. 2007)). Under this framework, spouses of those killed in terrorist attacks generally receive $8 million in solatium damages, parents and children receive $5 million, and siblings receive $2.5 million. App.158-159 (*Id.* at 104-105). The district court varied the baseline awards for certain plaintiffs based on individualized circumstances. *See*, *e.g.*, App.163-164 (*Id.* at 110-111).

The district court then appointed Special Masters to make recommendations about eligibility and damages for the remaining bellwether plaintiffs. App.54, 179 (*Id.* at 1, 126). Special Master Stephen A. Saltzburg considered K.E.F.V.'s claim, along with the claims of Senior Chief Vickers' other family members. *See* App.293-315 (Saltzburg Rep. at 73-95). He found she had stated a claim and recommended the court award her solatium damages, even though she was in utero during the attack. Special Master Saltzburg explained:

10

> Courts that have denied recovery to unborn children have reasoned that awards to children who were not "alive" at the time of an attack would result in "a potentially unlimited class" of plaintiffs, including, for example, children born "almost 30 years after" an attack. *See, e.g.*, *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 15 (D.D.C. 2012). But awarding solatium in the narrow circumstance where a child was a viable fetus at the time of the attack does not implicate the "expansive and indefinite scope of liability" that such decisions guard against. *See id*.

App.298 (*Id.* at 78). Following the direction to rely on "well-established statements of common law, found in state reporters, the Restatement of Torts, and other respected treatises," App.298-299 (quoting Dkt. 78 at 91 (App.144)), Special Master Saltzburg also looked to § 869 of the Restatement (Second) of Torts. Section 869 explains that "[o]ne who tortiously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive." Restatement (Second) of Torts § 869 (Am. L. Inst. 1979). Special Master Saltzburg thus recommended sustaining K.E.F.V.'s claim under § 1605A(c). App.298-299 (Saltzburg Rep. at 78-79). But he recommended a reduced award for K.E.F.V. of $2.5 million — 50% of the *Peterson II* baseline for children of a terrorist victim — based on a previous decision in another case reducing an "award by one-half" for a plaintiff born two days after an attack. *Id.* (quoting *Goldstein v. Islamic Republic of Iran*, 383 F. Supp. 3d 15, 23 (D.D.C. 2019)). Plaintiffs did not object to Special Master Saltzburg's Report and Recommendation.

But the district court disagreed. It held that K.E.F.V. lacked standing to pursue her claim under 28 U.S.C. § 1605A(c). *See* App.193-194 (Dkt. 137 at 13-

11

14).  In reaching this conclusion, the district court did not analyze whether in-utero plaintiffs can recover solatium under general tort-law principles.  Instead, it followed its previous decision in *Wamai*, which denied recovery to a plaintiff born one month after the attack.  *Id.* (citing *Wamai v. Republic of Sudan*, 60 F. Supp. 3d 84, 96 (D.D.C. 2014), *aff'd in part, vacated in irrelevant part sub nom. Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017)).  Both decisions relied on another district-court decision, *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 15 (D.D.C. 2012), which dismissed claims of 21 plaintiffs born after the 1983 Beirut Marine Barracks bombing.  *Davis* did not distinguish between plaintiffs who were in utero during an attack and plaintiffs born more than a decade later.  The district court here adopted the reasoning from *Davis* that, under the Restatement, a solatium damages claim "requires that the terrorist attack be '*directed at*' a third person" and attacks cannot be "'directed at' unborn family members, a potentially unlimited class" that "could remain open for decades after a terrorist attack."  App.193-194 (Dkt. 137 at 13-14) (brackets omitted).  The court did not explain how this logic applied to K.E.F.V., who was seven months in utero during the attack and so could not have been born years later.

The district court also distinguished one recent decision of another district court in this Circuit, *Goldstein*, 383 F. Supp. 3d 15, which allowed a child born two days after his brother was injured to recover solatium damages under

12

§ 1605A(c).  App.194 (Dkt. 137 at 14 n.10).  The *Goldstein* court gave two rationales for allowing recovery.  *First*, "there is little difference between a child born two days after the attack and a child who was only [a] month old at the time of the attack," and solatium damages should be consistent across similarly situated plaintiffs.  *Goldstein*, 383 F. Supp. 3d at 23 (brackets omitted)*.  Second*, the mother's shock following the attack may have caused the brother's premature birth.  *Id.*  Here, the district court held there were "[n]o such special circumstances" warranting recovery.  App.194 (Dkt. 137 at 14 n.10)*.

## SUMMARY OF ARGUMENT

**I.**    K.E.F.V. brings a claim for solatium damages under the FSIA's private right of action, 28 U.S.C. § 1605A(c).  The federal private right of action expressly authorizes "solatium" damages — damages for loss of society and mental anguish following a close family member's death.  But it does not set forth the elements of such a claim.  Instead, courts must look to state law and general tort-law principles.  In doing so, courts primarily rely on state wrongful-death statutes and the common law governing intentional infliction of emotional distress — the same claims family-member plaintiffs brought before Congress created the federal private right of action.

These general tort-law principles allow in-utero plaintiffs to recover solatium damages.  The common-law consensus, dating back more than 130 years,

is that in-utero children can recover under state wrongful-death statutes. This extends to claims for loss of society and emotional distress — the two key harms solatium damages address. In many jurisdictions, a child can also recover for loss of consortium based on a parent's injury while the child was in utero. And, beyond claims based on a parent's injury or death, the Restatement (Second) of Torts confirms that children can recover for *any* tort committed while they are in utero.

The district court should have recognized this common-law consensus and allowed K.E.F.V.'s claim for solatium damages to proceed.

**II.** Instead, the district court rejected K.E.F.V.'s claim for three reasons. Each is unpersuasive. *First*, the district court rejected K.E.F.V.'s claim to avoid creating a limitless class of after-born plaintiffs that could remain open for decades. This rationale failed to distinguish between plaintiffs who were in utero during the attack and plaintiffs who were conceived after the attack. *Second*, the court misconstrued § 46(2) of the Restatement as requiring that the attack be directed at K.E.F.V. In fact, the attack was directed at her father, and K.E.F.V. is entitled to recover as an immediate family member. What is more, the attack was equally directed at K.E.F.V. as it was to her siblings. *Third*, the court erred by failing to recognize that in-utero children are similarly situated to infants who lose a parent. If courts believe such plaintiffs suffer a different injury, they can address

14

those concerns by exercising their discretion over damages — not by dismissing their claims for lack of standing.

## STANDARD OF REVIEW

Whether K.E.F.V. can state a claim for solatium damages under 28 U.S.C. § 1605A(c) is a question of law the Court considers de novo.  *See*, *e.g.*, *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 332 (D.C. Cir. 2003).

## ARGUMENT

### I.    K.E.F.V. SHOULD RECOVER SOLATIUM DAMAGES UNDER GENERAL PRINCIPLES OF TORT LAW

#### A.    The FSIA's Private Right of Action Authorizes Solatium Damages Consistent With General Principles of Tort Law.

K.E.F.V. brings a single claim under § 1605A(c)'s private right of action for solatium damages.  That cause of action authorizes "economic damages, solatium, pain and suffering, and punitive damages."  28 U.S.C. § 1605A(c).  But it does not set forth elements a plaintiff must prove to recover these damages.  Instead, courts are to apply general tort-law principles.  In evaluating claims for solatium damages, courts thus look to state wrongful-death statutes and state tort-law claims for intentional infliction of emotional distress.

##### 1.    *The Pass-Through Approach*

Before Congress created a private right of action, plaintiffs relying on the FSIA's terrorism exception had to assert a claim under another source of law, such

as state law.  *See Owens v. Republic of Sudan*, 864 F.3d 751, 764 (D.C. Cir. 2017), *answering certified question*, 194 A.3d 38 (D.C. 2018), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020). Under this "pass-through" approach, family-member plaintiffs generally sought recovery for mental pain and suffering by bringing claims under a state's wrongful-death statute or for intentional infliction of emotional distress.  If plaintiffs had a claim under either approach, courts typically awarded the same damages.  For example, in *Estate of Heiser v. Islamic Republic of Iran*, the court awarded one widow $8 million in damages for "loss of . . . companionship and protection" and "mental pain and suffering" under Florida's wrongful-death statute.  466 F. Supp. 2d 229, 275 (D.D.C. 2006).  It then considered a different widow's claim under California law.  *Id.* at 308.  Because California's wrongful-death statute limited recovery to economic harms, it reached the widow's California tort-law claim for intentional infliction of emotional distress.  *Id.* at 304, 315.  And it awarded her $8 million for the "emotional distress" and "pain and suffering that she sustained as a result of her husband's untimely death."  *Id.* at 315.

This "pass-through" approach created two problems.  *First*, "courts faced a cumbersome and tedious process of applying choice of law rules and interpreting state law for each claim."  *Owens*, 864 F.3d at 764 (internal quotation marks

16

omitted). *Second*, differences in state law "caused recoveries to vary among otherwise similarly situated claimants" and denied some plaintiffs recovery entirely. *Id.* at 765. *Heiser* illustrates both problems. The court had to consider claims under the laws of 11 different states. *Heiser*, 466 F. Supp. 2d at 271. Most siblings recovered $2.5 million for their mental pain and suffering based on either their state's wrongful-death statute or state common-law claims for intentional infliction of emotional distress. *See*, *e.g.*, *id.* at 336-37, 342. But the court denied recovery to victims' siblings living in Louisiana because Louisiana law did not recognize their claim under either theory. *Id.* at 326.

### 2. *The Private Right of Action*

Congress resolved both problems by creating a uniform federal private right of action. *Owens*, 864 F.3d at 765.[3] Although § 1605A(c) "provides a private right of action, it does not provide guidance on the substantive bases for liability to determine Plaintiffs' entitlement to damages." *Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 137 (D.D.C. 2018). And as this Court has explained, federal "courts are not authorized to craft a body of federal common law in deciding FSIA terrorism exception claims." *Fraenkel*, 892 F.3d at 353. Thus,

---

[3] *See also* 154 Cong. Rec. S55 (daily ed. Jan. 22, 2008) (statement of Sen. Lautenberg), 2008 WL 182982 (explaining that private right of action "fixes th[e] problem" that "judges have been prevented from applying a uniform damages standard to all victims in a single case because a victim's right to pursue an action against a foreign government depends upon State law").

the private right of action "in effect instructs federal judges to find the relevant law, not to make it." *Bettis*, 315 F.3d at 333 (analyzing the private right of action under an earlier version of the FSIA's terrorism exception).

To find the relevant law, courts should look to "well-established statements of common law, found in state reporters, the Restatement of Torts, and other respected treatises." *Fraenkel*, 892 F.3d at 353. These "generally accepted legal standards of the states provide the only steady foundation for the rules of decision" for the federal private right of action. *Est. of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 25 (D.D.C. 2009). In essence, because § 1605A(c) "does not spell out the elements of these claims," courts "apply general principles of tort law" from other sources. *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 157 n.3 (D.D.C. 2011).

### 3.    *Solatium Damages Under the Private Right of Action*

The private right of action authorizes damages "includ[ing] economic damages, solatium, pain and suffering, and punitive damages," 28 U.S.C. § 1605A(c), and K.E.F.V. seeks solatium damages from her father's death. Courts primarily rely on the same two legal theories that plaintiffs used under the pass-through approach:  solatium as part of wrongful-death claims, and the tort of intentional infliction of emotional distress.

18

*First*, solatium is "traditionally a compensatory damage which belongs to the individual heir personally." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 29 (D.D.C. 1998).[4]  "It began as a remedy for the loss of a spouse or a parent" in wrongful-death actions, representing the general expansion of wrongful-death damages "to include sentimental as well as economic losses." *Id.*  Solatium recognizes two "separate" emotional harms from the death of a family member. *Id.* at 31.  One harm is the "loss of comfort and society . . . which the claimant would have received had decedent lived." *Id.*  In essence, it is the loss of "love, affection, care, attention, companionship, comfort and protection" a family member typically provides. *Id.*  The other harm is "mental anguish, bereavement and grief resulting from" a family member's death. *Id.* at 30.  Children "are presumed to suffer damages for mental anguish" from the loss of a parent. *Id.*  And for terrorist attacks like this, "the character of the wrongful act itself increases the magnitude" of the mental anguish. *Id.*

*Second*, courts analyze solatium claims under 28 U.S.C. § 1605A based on common-law principles of intentional infliction of emotional distress.  In the terrorism context, a claim for solatium is "nearly indistinguishable" from a claim

---

[4] Although the court in *Flatow* analyzed an earlier version of the terrorism exception, this Court has recognized that it is the "seminal opinion explaining the origins and particulars of solatium damages" and "remains the best explanation of solatium damages in this circuit." *Fraenkel*, 892 F.3d at 356.

for intentional infliction of emotional distress.  *Fraenkel*, 892 F.3d at 357.  Thus —

mindful of this Court's direction to look to Restatements to find the common law,

*id.* at 353 — district courts often rely on § 46 of the Restatement:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> > (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
> >
> > (b) to any other person who is present at the time, if such distress results in bodily harm.

Restatement (Second) of Torts § 46 (Am. L. Inst. 1965).

Applying the Restatement, this Court has held that family-member plaintiffs

are asserting a claim based on "conduct . . . directed at a third person" — their

immediate family member — under § 46(2).  *See Bettis*, 315 F.3d at 334-38

(rejecting the idea that family-member plaintiffs could recover solatium damages

under § 46(1) on the theory that the attack was also directed at them under an

earlier version of the FSIA exception).  But in the context of § 1605A(c), courts

have "suspen[ded] . . . the presence requirement" set out in § 46(2)(a).  *Heiser*,

659 F. Supp. 2d at 27.  That is because "a terrorist attack — by its nature — is

directed not only at the victims but also at the victims' families[,] . . . loved ones

20

and others in the United States." *Id.* (quoting *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)).  Still — recognizing that "some lines must be drawn" and that the law cannot turn the entire "American citizenry into a potential class of [intentional infliction of emotional distress] plaintiffs" — courts have retained the limitation to immediate families.  *Id.*  In other words, the prong of § 46(a)(2) "requiring presence has been waived because acts of terrorism are sufficiently extreme and outrageous to demonstrate that they are intended to inflict severe emotional harm on even those persons who are not present during the act."  *Hirshfeld*, 330 F. Supp. 3d at 141.  But the "'immediate family' prong . . . generally permit[s] recovery only by spouses, parents, siblings and children" of the victim of a terrorist attack.  *Id.*

### B.    Common-Law Principles Allow Recovery for Torts Committed While a Plaintiff Was In Utero.

State courts applying these general principles would allow plaintiffs who were in utero during a terrorist attack injuring or killing their immediate family member to recover solatium damages.  State wrongful-death statutes allow a child to recover damages from the death of a parent after the child is conceived but before the child is born.  Indeed, such in-utero plaintiffs have been able to recover for personal injuries arising from the loss of a parent for more than a century.  And state courts have extended this principle to allow children who were in utero when their parent is injured to recover for loss of consortium.  Furthermore, the settled

consensus in tort law — as reflected in the Restatement — is that plaintiffs can recover for all injuries from torts committed while they are in utero.  Because K.E.F.V.'s claim under § 1605A(c) tracks this common-law consensus, she should recover for her injuries from her father's death when she was seven months in utero.

### 1.    *Wrongful-Death Claims*

As *Flatow* recognized, K.E.F.V.'s solatium claim is properly analyzed through the lens of wrongful-death claims.  *See* 999 F. Supp. at 29.  Historically, the common law did not recognize claims for wrongful death, but jurisdictions began enacting wrongful-death statutes in the mid-19th century.  *See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 389 (1970) (explaining history of wrongful-death claims).  These statutes first created an action for the spouse and children of an individual wrongfully killed to recover damages for their loved one's untimely death.  *Flatow*, 999 F. Supp. at 29.

Before the end of the 19th century, state courts considered claims under wrongful-death statutes from children who were in utero when their father died.  They allowed these plaintiffs to recover.  Take *Nelson v. Galveston*, an 1890 decision by the Texas Supreme Court allowing an in-utero plaintiff to recover as a "surviving child[]" under a Texas wrongful-death statute.  14 S.W. 1021, 1023 (Tex. 1890).  There, the court allowed recovery because "a posthumous child must

22

be considered in the same situation, and entitled to the same benefits, as one born during the life of its father." *Id.*  Likewise, three years later, New York courts recognized that when an unborn child, who is later born alive, is deprived of a parent, the child "suffers in its means of support equally with the children that were living at the time of the decease of such parent." *Quinlen v. Welch*, 23 N.Y.S. 963, 963, 964 (N.Y. Gen. Term 1893) (allowing recovery by child born the day after her father's death under dram shop law allowing recovery for any person "injured in . . . means of support"), *aff'd on other grounds*, 36 N.E. 12 (N.Y. 1894).[5]

This trend of allowing in-utero plaintiffs to recover continued through the 20th century.  For example, in 1912, the Supreme Court of Oklahoma explained there was "no doubt" that a child "unborn at the time of his father's death, but later born alive," can recover for the father's death.  *Herndon v. St. Louis & S.F. R.R. Co.*, 128 P. 727, 730 (Okla. 1912).  Such an in-utero child was "a beneficiary and entitled to participate under the statute in any recovery of damages for the wrongful death of its father."  *Id.*  Similarly, the Missouri Supreme Court allowed recovery for in-utero plaintiffs under a railroad-related wrongful-death statute because it is "a well-settled rule of law relative to successions, and to most other cases in relation to infants, that a child *en ventre sa mére*, as to every purpose

---

[5] *See also Indiana ex rel. Niece v. Soale*, 74 N.E. 1111, 1112 (Ind. Ct. App. 1905) (allowing recovery by child born two months after father's death because the death was an injury to the child's means of support under the statute).

where it is for the benefit of the child, is to be considered *in esse*." *Bonnarens v. Lead Belt Ry. Co.*, 273 S.W. 1043, 1046 (Mo. 1925).

That consensus remained as wrongful-death statutes expanded to allow plaintiffs to recover for emotional, not just economic, injuries caused by an immediate family member's death. *See Flatow*, 999 F. Supp. at 29. In fact, by 1938, the Supreme Court of Appeals of Virginia rejected as "not impressive" a defendant's objection to jury instructions allowing a child who was "born subsequent to [the father's] death" to recover for the "loss of a father's care, attention and society." *Chick Transit Corp. v. Edenton*, 196 S.E. 648, 651 (Va. 1938). As the court explained: "The loss to this child of a father's care, attention and society is just as great as it would have been if it had been born prior to the death of the father. He will miss the solace and comfort usually provided by a father to his child no less by reason of the fact that he was born after the father was killed." *Id.* Applying Idaho law, the Ninth Circuit also recognized an in-utero plaintiff's right to recover for loss of "society" from a father's wrongful death. *See Boise Payette Lumber Co. v. Larsen*, 214 F.2d 373, 379 (9th Cir. 1954) (rejecting challenge to damages verdict for widow and "afterborn son" as excessive because they may have included damages for loss "of his society" as well as lost income).

Modern cases likewise allow in-utero children to recover for emotional distress under wrongful-death statutes. For instance, in *Marrero Artache v.*

24

*Autoridad de Energia Electrica*, 924 F. Supp. 346, 351 (D.P.R. 1996), the court denied a motion to dismiss an in-utero plaintiff's Puerto Rican-law claim for emotional distress from her father's wrongful death. The court explained that a reasonable jury could find that the child "has and will suffer emotional distress" from the "los[s of] a biological parent who she will never know." *Id.* Similarly, in *Ellis v. Humana of Florida, Inc.*, 569 So. 2d 827, 828 (Fla. Dist. Ct. App. 1990), the Florida Appeals Court allowed a child born six weeks after his father's death to recover under Florida's wrongful-death statute. Florida's wrongful-death statute expressly allowed "a minor child" to "recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury," *see* Fla. Stat. § 768.21 (1990).[6]

Many other modern cases allow in-utero children to recover under wrongful-death statutes without discussing the nature of the damages. *See*, *e.g.*, *Boland v. Est. of Smith*, 237 A.3d 723, 725, 728 (Vt. 2020) (allowing child "born twenty-eight weeks after her father's death" to pursue claim because her "fetal status at the time of her father's death does not preclude her, as a matter of law, from recovering" under dram shop act); *Fizer v. Davis*, 706 So. 2d 244, 246 (Miss.

---

[6] *See also Quinn v. Pennsylvania, Dep't of Transp.*, 719 A.2d 1105, 1109 (Pa. Commw. Ct. 1998) (allowing in-utero plaintiff to recover under wrongful-death statute for loss of "such services as guidance, tutelage, and moral upbringing"), *abrogated on other grounds by Dep't of Pub. Welfare v. Schultz*, 855 A.2d 753 (Pa. 2004).

1998) (allowing six-and-a-half month in-utero plaintiff to recover for wrongful-death claims); *deVente v. Flora*, 684 S.E.2d 91, 93 (Ga. Ct. App. 2009) (holding child born five months after father's death was the appropriate wrongful-death plaintiff after borrowing the definition of "child" from the "laws of descent and distribution").

In sum, Plaintiff-Appellant is aware of no court in the United States that has denied a child damages under a wrongful-death statute because the child was still in utero at the time of the parent's death.

### 2.    *Loss of Consortium*

In many jurisdictions, children can also recover damages for the death or injury of a parent as part of a loss-of-consortium claim.  Loss of consortium compensates plaintiffs for the pain and suffering caused by the loss of a family member's society — one of the same harms that is the basis for solatium.  *See*, *e.g.*, *Flatow*, 999 F. Supp. at 29 (citing John F. Wagner Jr., *Recovery of Damages for Loss of Consortium Resulting from Death of Child — Modern Status*, 77 A.L.R. 4th 411 (1989)).  As with claims for wrongful death, in-utero children recover damages just like children who were already born.

For example, in *State Farm Mutual Automobile Insurance Co. v. Luebbers*, a New Mexico appellate court allowed a plaintiff who was "a four-week-old fetus" at the time of his father's death to bring a "loss of consortium claim" for the loss of

his father's "love, care, society, companionship, and the like." 119 P.3d 169, 177, 180 (N.M. Ct. App. 2005). The court recognized that the injury to an unborn child "is the inability to form any parental relationship rather than the loss of an established bond," but held that this difference at most affects a plaintiff's damages and does not "defeat the claim as a matter of law." *Id.* at 180. Even more to the point, the court recognized the similarities between young infants and in-utero plaintiffs:

> Also, we see no way to meaningfully distinguish a parent's pre-birth death from any number of scenarios involving very young infants whose parents — such as military personnel — are killed while away from the home for extended periods of time. Why should a one-week-old infant have a claim as a matter of law, but not a fetus born and surviving? Such a distinction is simply too fine to ensconce as a bright line rule. It is better to allow the fact finder to assess the relative strength of the claims after a full factual hearing.

*Id.*

Other states' courts of last resort agree. The Iowa Supreme Court upheld "a child's claim arising at birth for the loss of consortium with a parent whose wrongful death occurred after the child was conceived but before the child's birth." *Est. of Gray ex rel. Gray v. Baldi*, 880 N.W.2d 451, 458 (Iowa 2016). The Massachusetts Supreme Judicial Court also allowed recovery for the loss of parental consortium arising from injury to a parent while a child was in utero. After recognizing that an in-utero child can recover for a parent's wrongful death, the court explained that "it would be anomalous to deny recovery for loss of

27

parental consortium to a child who was conceived before the parent was seriously (but not fatally) injured." *Angelini v. OMD Corp.*, 575 N.E.2d 41, 45 (Mass. 1991).[7]

### 3.    *General Tort-Law Principles*

The Restatement (Second) of Torts goes beyond parental loss and embraces the general rule that unborn children can recover for *all* torts committed while they are in utero, as long as they are later born alive. *See* Restatement (Second) of Torts § 869 ("(1) One who tortiously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive."). Recognizing that early decisions did not allow unborn children to recover for torts committed while they were in utero, the Restatement cited *Bonbrest v. Kotz*, 65 F. Supp. 138 (D.D.C. 1946), as the start of a reversal allowing unborn children to recover for in-utero injuries. *See* Restatement (Second) of Torts § 869 (cmt. a). By 1979, when this section of the Restatement was published, there "appear[ed] to be no American

---

[7] Courts have also allowed in-utero plaintiffs to recover for the loss of a parent under different legal theories. For example, in *Crumpton v. Gates*, the Ninth Circuit allowed a plaintiff who was two months in utero when his father was killed to bring a 42 U.S.C. § 1983 claim for violating his "substantive due process liberty interest in having familial relations with a parent." 947 F.2d 1418, 1422 (9th Cir. 1991).

jurisdiction with a decision still standing refusing recovery" for tort claims simply because a plaintiff was in utero. *Id.* (reporter's note).[8]

Indeed, many of the more recent decisions awarding in-utero plaintiffs damages for the loss of a parent rely on the broader principle: "[A] child born alive, having suffered prenatal injuries at any time after conception, has a cause of action against the alleged tortfeasor." *Larusso v. Garner*, 888 So. 2d 712, 719 (Fla. Dist. Ct. App. 2004) (per curiam) (quoting *Day v. Nationwide Mut. Ins. Co.*, 328 So. 2d 560, 562 (Fla. Dist. Ct. App. 1976), for the general principle before awarding loss-of-consortium damages to a plaintiff who was three months in utero at the time of his mother's injury). *See also Angelini*, 575 N.E.2d at 44-45 (relying on earlier Massachusetts cases allowing recovery for physical torts committed while the plaintiff was in utero).

### C.    The District Court Should Have Applied These Common-Law Principles.

Children who are in utero when their parent is injured or killed suffer from the loss of their parent's love, support, and guidance. And settled law permits such in-utero plaintiffs to recover for these injuries. The district court should have allowed K.E.F.V.'s claim to proceed based on this consensus. K.E.F.V.'s claim is

---

[8] Some jurisdictions still limited recovery to unborn children who were "viable" at the time of the injury, but the Restatement rejected that distinction. Restatement (Second) of Torts § 869.

consistent with "well-established principles of law, such as those found in Restatement (Second) of Torts and other leading treatises, as well as those principles that have been adopted by the majority of state jurisdictions." *Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 61.  Instead, the district court relied on a judicially created exception under § 1605A(c), violating this Court's direction to "find the relevant law, not . . . make it." *Bettis*, 315 F.3d at 333.

What is more, the district court's decision denies plaintiffs solatium damages under § 1605A(c) who could have recovered such damages under the earlier pass-through approach applying state wrongful-death statutes.  The Vickers family lived in Virginia when Senior Chief Vickers was killed, and K.E.F.V. was born there two months later.  App.294, 296 (Saltzburg Rep. at 74, 76).  More than 80 years ago, the Supreme Court of Appeals of Virginia allowed an in-utero plaintiff to recover for loss of a "father's care, attention and society" under its wrongful-death statute.  *Chick Transit*, 196 S.E. at 651.

Congress enacted the federal private right of action to ensure justice for U.S. national victims of state-sponsored terrorism under a single cause of action.  *See*, *e.g.*, 154 Cong. Rec. S54 (daily ed. Jan. 22, 2008) (statement of Sen. Lautenberg), 2008 WL 182982 (describing proposed private right of action as "essential to providing justice to those who have suffered at the hands of terrorists").  And it explicitly provided for "solatium" damages — the traditional remedy under state

30

wrongful-death statutes for family members' mental pain and suffering.  *See* 28 U.S.C. § 1605A(c); *Flatow*, 999 F. Supp. at 29.  The federal private right of action did not deprive U.S. nationals of claims they had under state law.  Quite the opposite.  After Congress enacted § 1605A(c) — which applied retroactively — courts awarded damages to plaintiffs who had been unable to recover under the pass-through approach.  *See*, *e.g.*, *Heiser*, 659 F. Supp. 2d at 25 (awarding "damages in light of traditional state-adopted principles of tort law" to plaintiffs that had not recovered under "the explicit requirements of the relevant state wrongful death statute").

This Court should recognize the state-law consensus and allow plaintiffs who are in utero at the time of a terrorist attack killing or injuring their immediate family member to state a claim for solatium under 28 U.S.C. § 1605A(c).

## II.    THE DISTRICT COURT'S REASONING IS UNPERSUASIVE

Rather than look to the common-law consensus, the district court rejected K.E.F.V.'s claim based on several policy concerns.  Each is unpersuasive.  *First*, the district court expressed concern about creating "a potentially unlimited class" of plaintiffs that "could remain open for decades."  App.193-194 (Dkt. 137 at 13-14).  But a plaintiff who was already in utero during the attack does not implicate this concern.  *Second*, the district court concluded the Taliban's attack murdering K.E.F.V.'s father was not "directed at" K.E.F.V.  *Id.*  Yet a terrorist attack directed

at a father is also directed at all his children — including those who are still in utero.  *Third*, the district court required "special circumstances" to award an in-utero plaintiff damages.  App.194 (*Id.* at 14 n.10).  But in-utero plaintiffs are similarly situated to infants at the time of an attack.  Courts should resolve any concerns about the extent of such plaintiffs' injuries by exercising discretion over damages awards, not by rejecting the claims altogether.

### A.    Concerns About an Unlimited Class of Plaintiffs Do Not Apply to K.E.F.V.

The district court's decision rejecting K.E.F.V.'s claim relied on a line of cases that failed to distinguish between in-utero children and children conceived after an attack.  These decisions rejected claims by all "after-born" plaintiffs to address policy concerns about children who are born years after an attack also recovering solatium damages.  Such concerns might be well-founded for plaintiffs born years after an attack.  But they are inapplicable here.

When Congress first created the private right of action, courts recognized the distinction between in-utero children and children conceived after — potentially years after — an attack.  In *Anderson v. Islamic Republic of Iran*, the district court ruled that a minor child who was seven months in utero at the time of her father's abduction had "standing to maintain a cause of action for loss of solatium."  90 F. Supp. 2d 107, 111, 113 & n.3 (D.D.C. 2000).  To be sure, the plaintiff there was born while her father was in captivity.  *Id.*  But the court did not consider this fact

32

in awarding solatium damages.  Instead, it relied only on *Bonbrest*, which allowed in-utero children who are later born alive to bring tort claims — at least for injuries suffered after they reach viability.  *Bonbrest* is the same case the Restatement recognized as the "[b]eginning" of "an all but universal change in the rule" to allow children to recover for injuries while they are in utero.  Restatement (Second) of Torts § 869 (cmt. a).

Around the same time, the Southern District of New York awarded solatium damages to a plaintiff who was three months in utero when his father was killed on September 11, 2001.  *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 237-38, 241 (S.D.N.Y. 2003), *as amended*, 2003 WL 23324214 (S.D.N.Y. May 19, 2003).  Eight years after that, in *Baker v. Socialist People's Libyan Arab Jamahirya*, the court rejected a claim for solatium damages by a child born 12 years after the attack, distinguishing the plaintiff from "an unborn child" that is "at least a viable fetus at the time of the harmful act," who may be "eligible for solatium damages."  775 F. Supp. 2d 48, 75 (D.D.C. 2011).

Starting with *Davis*, however, district courts analyzing § 1605A(c) claims stopped distinguishing between in-utero children and children conceived after an attack.  In *Davis*, the court rejected claims from 21 "after-born children" — whose immediate family members were killed or injured in the October 1983 Marine Barracks bombing in Beirut — without discussing when those plaintiffs were

33

born.[9]  882 F. Supp. 2d at 15.  The court reasoned that terrorist attacks cannot be

"'directed at' unborn family members, a potentially *unlimited* class."  *Id.* (quoting

Restatement (Second) of Torts § 46) (emphasis added).  The court emphasized that

such a class "could remain open for decades after a terrorist attack" and could

include "children born in 2012 — almost 30 years after the bombing."  *Id.*

Opining that "Congress did not intend for FSIA § 1605A(c) to create such an

expansive and indefinite scope of liability" and that "some lines must be drawn," it

rejected all after-born plaintiffs' claims.  *Id.* (brackets omitted).

Other district-court decisions in this Circuit have followed *Davis*.  Many of

these decisions involved only plaintiffs conceived after the attack.  *See*, *e.g.*, *Wultz*

*v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 36 (D.D.C. 2012) (dismissing

claim of plaintiff born 19 months after the attack).  Others, like the decision below,

dismissed the claims of plaintiffs who were in utero during the attack.  But every

court to explain its rationale has focused on the need to draw definite lines and

avoid "expansive and indefinite scope of liability."  *See*, *e.g.*, *Wamai*, 60 F. Supp.

---

[9] The Special Masters' reports indicate that two plaintiffs were in utero at the time of the attack.  *See* Report of Special Master Pursuant to Order of Reference Concerning Count CXCC ("Count CXCC Report") at 4-5, *Davis v. Islamic Republic of Iran*, No. 1:07-cv-01302 (D.D.C. Mar. 7, 2012), Dkt. 114; Report of Special Master Pursuant to Order of Reference Concerning Counts CXCVIII at 2, *Davis v. Islamic Republic of Iran*, No. 1:07-cv-01302 (D.D.C. Mar. 7, 2012), Dkt. 116.  But the vast majority were conceived and born years later, including plaintiffs born more than a decade after the attack.  *See*, *e.g.*, Count CXCC Report at 6, 20 (recommending award for plaintiff born in 1995).

3d at 96 (dismissing the claim of a plaintiff born one month after the bombing to avoid creating "liability to children born fifteen years after an attack"); *Onsongo v. Republic of Sudan*, 60 F. Supp. 3d 144, 152 (D.D.C. 2014), *aff'd in part, vacated in part sub nom. Owens*, 864 F.3d 751 (same); *Est. of Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 44 (D.D.C. 2012) (dismissing the claim of a plaintiff born almost two months after the attack because "some lines must be drawn" and "after-born children are ineligible to receive solatium awards"); *see also Force v. Islamic Republic of Iran*, 617 F. Supp. 3d 20, 37 n.2 (D.D.C. 2022) (following *Davis* in dismissing the claim of a plaintiff born four months after the attack because a plaintiff "must have been alive at the time of the attack in order to collect solatium damages").

Those concerns are absent here. Indeed, K.E.F.V. is unaware of any case denying recovery to an in-utero plaintiff under the terrorism exception to the FSIA that has considered the distinction between an in-utero plaintiff and a later-conceived plaintiff. This contrasts with state courts, which have generally drawn that very line. As one court explained, "children who were conceived *after* the parent was injured" may suffer from their parent's injury, but only children who are "conceived *before*" can recover, lest a defendant "become liable for the loss of consortium several years, perhaps even *decades*, after the injury to the parent." *Angelini*, 575 N.E.2d at 43 (emphases added). Similarly, state courts have found

no tension between allowing already-conceived children to recover for loss of consortium, while also holding that after-conceived children "have no cognizable claim for loss of consortium." *Gray*, 880 N.W.2d at 458.[10]  The Court should draw the same distinction here.

The limiting-principle rationale does not apply to K.E.F.V.'s claim.  Indeed, she is not part of an "unlimited class" of plaintiffs.  App.193 (Dkt. 137 at 13) (quoting *Davis*, 882 F. Supp. 2d at 15).  All Senior Chief Vickers' immediate family members with claims stemming from the attack were identifiable at the moment of the attack — even though one family member was seven months in utero.  Allowing K.E.F.V. to recover does not create a "class of after-born plaintiffs eligible to recover [that] could remain open for decades after a terrorist attack."  App.193-194 (Dkt. 137 at 13-14) (quoting *Davis*, 882 F. Supp. 2d at 15).  The number of claimants here did not change after the attack.  Although "some lines must be drawn" to avoid an "indefinite scope of liability," *Davis*, 882 F. Supp. 2d at 15 (brackets omitted), excluding children who were in utero during an attack because they were born months, weeks, or even days after the attack is not such a line.  The Court should hold that children who are in utero when their

---

[10] *See also Mason v. Luther*, 903 So. 2d 1145, 1149 (La. Ct. App. 2005) (explaining that "the three children not yet conceived when their mother was in an accident . . . have no cause of action for loss of consortium" but the one child "conceived at the time of the accident, and subsequently born alive, would have a cause of action").

immediate family member is killed or injured in a terrorist attack may state a claim under § 1605A(c)'s private right of action.

### B.    K.E.F.V. Can Recover for an Attack Directed at Her Father.

The decision below also reasoned that intentional infliction of emotional distress under § 46(2) of the Restatement "requires that the terrorist attack be '*directed at* a third person.'"  App.193 (Dkt. 137 at 13) (brackets omitted). Applying *Davis*, the district court concluded that even if terrorist attacks are directed at "the family members then-alive," they are not "'directed at' unborn family members."  *Id*.  This reasoning is also unpersuasive.

This focus on whether an attack is "directed at" an unborn person is misplaced.  The "third person" referenced in § 46(2) is Senior Chief Vickers, not K.E.F.V.  That is clear from the structure of § 46, which has two subsections.  The first subsection allows a plaintiff to recover for emotional distress from "extreme and outrageous conduct" directed at the plaintiff individually.  Restatement (Second) of Torts § 46(1).  The second subsection, on the other hand, provides that, "[w]here such conduct is *directed at a third person*, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress . . . to a member of *such person's* immediate family who is present at the time, whether or not such distress results in bodily harm."  *Id.* § 46(2)(a) (emphases added).  As many district courts have explained, immediate family-member plaintiffs, like

37

K.E.F.V., can recover under the second subsection because the "conduct was directed at decedents, not plaintiffs." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 79 (D.D.C. 2010); *see also Bettis*, 315 F.3d at 335 (holding family-member plaintiffs can recover under § 46(2) — not § 46(1) — of the Restatement because the extreme and outrageous conduct is directed at the victim).

Courts also have dispensed with the "physically present" requirement for "immediate family members of . . . decedents [who] died in terrorist attack[s]." *Selig v. Islamic Republic of Iran*, 573 F. Supp. 3d 40, 63 (D.D.C. 2021). Thus, barring recovery because the terrorist attack cannot be directed at unborn plaintiffs misapplies § 46(2) of the Restatement. There is no question that the extreme and outrageous conduct was directed at Senior Chief Vickers. K.E.F.V. can recover because she is part of Senior Chief Vickers' immediate family, and she need not have been physically present at the attack.

In any event, this attack was also directed at K.E.F.V., just like Senior Chief Vickers' other immediate family members. The rationale for dispensing with the presence requirement is that "a terrorist attack — by its nature — is directed not only at the victims but also at the victims' families." *Heiser*, 659 F. Supp. 2d at 27. Even if this Court concludes that this rationale requires extreme and outrageous conduct directed at K.E.F.V., she should recover. Terrorist attacks are directed at in-utero children, just like other children. Terrorists aim "not only to

38

harm the victims, but to instill terror in their loved ones and others in the United States." *Salazar*, 370 F. Supp. 2d at 115 n.12.  Such loved ones include a pregnant spouse and an in-utero child, who will forever be deprived of forming a relationship with his or her parent.

The terrorists who killed Senior Chief Vickers did not know and could not identify the individual family members of the 38 individuals they killed on August 6, 2011.  Nor is there any such requirement. The terrorists directed their conduct at all of the victims' family members.  There is thus no reason to conclude that the terrorists intended to inflict distress on a victim's two-month-old child but not on a victim's child born two months after the attack.  It is only children conceived after the terrorist attack — who do not exist at the time of the attack — who are differently situated.

**C.    K.E.F.V. is Similarly Situated to Infants Who Recover Solatium.**

The district court also erred by disregarding the similarity between an infant born just before and one born just after a terrorist attack.  Both children suffer the same injury from losing a parent.  By declining to treat an in-utero child the same as an infant absent "special circumstances," App.194 (Dkt. 137 at 14 n.10), the district court ignored the need to "look to prior decisions" to ensure that similarly injured plaintiffs receive similar damages awards, *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 78 (D.D.C. 2010).

Damages for solatium "are by their very nature unquantifiable," *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 72 (D.D.C. 2015).  But they generally seek to compensate a plaintiff for two independent harms:  (1) the loss of the family member's society "including love, affection, care, attention, companionship, comfort and protection" and (2) the "mental anguish" from the family member's death.  *Flatow*, 999 F. Supp. at 31.  The loss of a parent's society has a "particularly devastating effect" on minor children, who depend on their parents "for financial, emotional, and spiritual support, unlike adult children." *Selig*, 573 F. Supp. 3d at 70, 75.  The death of a parent thus means the loss of "an important source of guidance, correction, and love at a time when [they] still desperately need[ ] it." *Id.* at 70.  In fact, children who lose a parent at a younger age suffer that loss "for a greater part of [their] formative childhood years." *Id.* at 72.

Applying these principles, courts award solatium damages to children who lose a parent during infancy.  These infants do not remember their parents or their parents' death, and they do not experience immediate mental anguish from the tragedy.  Instead, the solatium damages focus on the loss of society, recognizing that "[t]he loss of [a] father while an infant" leaves the child "deprived of important parental care and support."  Report and Recommendation, *Lee v. Islamic Republic of Iran*, 2022 WL 20444119, at *6 (D.D.C. Apr. 11, 2022), *adopted by*

40

2023 WL 4891534 (D.D.C. June 29, 2023) (awarding $5 million in solatium

damages).  Similarly, in *Holland v. Islamic Republic of Iran*, a child who had

recently turned one received $12 million in solatium because the terrorist attack

"robbed [him] of a father at an extremely young age, a loss that was exceedingly

detrimental to [his] upbringing and well-being."  496 F. Supp. 2d 1, 35 (D.D.C.

2005) (applying previous version of the FSIA terrorism exception requiring

application of Kentucky law).[11]  Even the decision below awarded $3 million in

---

[11] *See also*, *e.g.*, *Spaulding v. Islamic Republic of Iran*, 2018 WL 3716881, at *3-4 (N.D. Ohio Aug. 3, 2018) (awarding solatium damages to a child who was five months old at the time of his father's death); *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 50, 57, 60 (D.D.C. 2008) (awarding $5 million in solatium damages to a child who was nine months old when his father died, recognizing that the distress was "very real" even if "markedly different from that of the older plaintiffs, who vividly remember the events"); *Salazar*, 370 F. Supp. 2d at 112, 116 (awarding $5 million in solatium damages to child who was 13 months old and had "no memories of her father" for the suffering stemming from the "absence of her father" and her mother's emotional response).  Infants also recover solatium damages from the injury to a parent, even though they presumably do not suffer mental anguish at the time of the attack.  *See*, *e.g.*, *Taitt v. Islamic Republic of Iran*, 2023 WL 2536518, at *13 (D.D.C. Mar. 16, 2023) (awarding baseline solatium damages to a son who was "an infant" when his father was wounded); *Ackley v. Islamic Republic of Iran*, 2022 WL 3354720, at *12, *16, *21, *31, *59 (D.D.C. Aug. 12, 2022) (awarding solatium damages to four children between seven and eleven months old when their fathers were injured); *Schooley v. Islamic Republic of Iran*, 2019 WL 2717888, at *41, *78 (D.D.C. June 27, 2019) (awarding solatium damages to a daughter who was 18 months old when her father was injured).  Finally, courts award infants solatium damages for the loss of a sibling, even though proof of a "close emotional relationship" is traditionally required for siblings to recover, *Flatow*, 999 F. Supp. at 30.  *See*, *e.g.*, *Ackley*, 2022 WL 3354720, at *13, *59 (awarding solatium damages to a half-sister who was five months old at the time of the attack).

solatium damages to the two-month-old daughter of an individual killed in the same attack as Senior Chief Vickers, acknowledging the "lasting harm" of "losing a parent."  App.202-203 (Dkt. 137 at 22-23).

Moreover, mental anguish can emerge later, after learning of the parent's death.  This delayed mental anguish is particularly likely with terrorist attacks, where "the tragedy itself is amplified by the malice which inspired the event." *Flatow*, 999 F. Supp. at 30.  For example, in *Bathiard v. Islamic Republic of Iran*, the court noted that the plaintiff, who was 11 months old when her father died, "testified credibly about the impact of her learning" about her father's death in a suicide bombing two decades after the attack.  2020 WL 1975672, at *6 (D.D.C. Apr. 24, 2020).

As state courts have recognized in allowing in-utero plaintiffs to recover, there is "no way to meaningfully distinguish a parent's pre-birth death from any number of scenarios involving very young infants whose parents — such as military personnel — are killed while away from the home for extended periods of time."  *State Farm*, 119 P.3d at 180.  "Why should a one-week-old infant have a claim as a matter of law, but not a fetus born and surviving?  Such a distinction is simply too fine to ensconce as a bright line rule."  *Id.*  So too here.

Recently, another court in this Circuit recognized the line-drawing problem with awarding solatium damages under § 1605A(c) to infants but not to in-utero

children.  In evaluating the claim of "a child born two days after" a bombing that injured his brother, the court found "little difference" compared to "a child who was only [a] month old at the time of the attack." *Goldstein*, 383 F. Supp. 3d at 23. "In both situations, the child's feelings of loss of society and comfort stem from the family dynamic and the condition of the victim and his or her relationship with the child." *Id.*  Because the *Goldstein* court also relied on evidence that the child "was born prematurely *as a result* of his mother's emotional shock and distress," the court below concluded that there were no similar "special circumstances" permitting K.E.F.V. to recover.  App.194 (Dkt. 137 at 14 n.10).  But that ignores *Goldstein*'s recognition that the effects of losing a parent are the same for an in-utero child and an infant, even absent such circumstances.

At most, the lack of memories and delayed mental anguish of an in-utero plaintiff may "affect the potential value of the claim." *State Farm*, 119 P.3d at 180.  The district court can address any concerns about the extent of injury to in-utero plaintiffs by exercising its discretion over damages awards.  The general framework of baseline awards that the court adopted, App.158 (Dkt. 78 at 105), is not "set in stone." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 (D.D.C. 2011).  It is a "center of gravity for solatium awards, around which a court may vary the final amount based on the facts and circumstances of a particular case." *Id.*

43

District courts awarding solatium damages to infants under the private right of action have departed downward based on that principle. For example, the district court here awarded only $3 million to the two-month-old daughter of an individual killed in the same attack as Senior Chief Vickers because of her "less close relationship" with her father and lack of memories. App.201-203 (Dkt. 137 at 21-23). Similarly, in *Bathiard*, a plaintiff who was 11 months old when her father died and spent the next two decades believing her abusive step-father was her biological father received $3.5 million in solatium given the limited relationship with her father and the "gap in her awareness." 2020 WL 1975672, at *6. Indeed, the Special Master recommended awarding K.E.F.V. $2.5 million in solatium damages because she was born after her father's death. App.299 (Saltzburg Rep. at 79). But any difference in damages should not affect the child's standing to bring a claim.

## CONCLUSION

The judgment below should be reversed.

December 22, 2023                          Respectfully submitted

                                           */s/ Grace W. Knofczynski*

Ryan R. Sparacino                          Joshua D. Branson
SPARACINO PLLC                             Andrew E. Goldsmith
1920 L Street, NW, Suite 835               Grace W. Knofczynski
Washington, D.C. 20036                     Jimmy A. Ruck
(202) 629-3530                             Chase H. Robinett
ryan.sparacino@sparacinopllc.com           KELLOGG, HANSEN, TODD, FIGEL &
                                             FREDERICK, P.L.L.C.
                                           1615 M Street, N.W., Suite 400
                                           Washington, D.C. 20036
                                           (202) 326-7900
                                           jbranson@kellogghansen.com
                                           agoldsmith@kellogghansen.com
                                           gknofczynski@kellogghansen.com
                                           jruck@kellogghansen.com
                                           crobinett@kellogghansen.com

                       *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(g), that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), the brief contains 10,923 words.

I further certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word 2016 in a proportionally spaced typeface (Times New Roman, 14 point).

December 22, 2023                    /s/ *Grace W. Knofczynski*
                                     Grace W. Knofczynski

## CERTIFICATE OF SERVICE

I hereby certify that, on December 22, 2023, I caused to be filed electronically the Brief for Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.  All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.


/s/ *Grace W. Knofczynski*
Grace W. Knofczynski

# ATTACHMENT A

*Cabrera, et al. v. Islamic Republic of Iran*

AUGUST WILDMAN
MAXWELL GAVAN CABRERA
R.X.C., by and through his next friend
August Wildman
CORBIN CABRERA
GILLIAN LEIGH CABRERA
RONALD PAUL HOPKINS
SUZANNE RENE MARTINEZ
JD PROSSER
ROBERT CABRERA
DANIEL MATIAS CABRERA
GLORIA DIANE TRELFA
JALANE ARDITH ADAMS
PETER ADAMS
ALMA MURPHY
PAUL MURPHY
RANA GOODRICH ALLEN
GINNY LAMB
SHERRY LOAN
LINDA PHANEUF
CAITLIN ELIZABETH
ANDERSON
L.G.A., by and through her next
friend Caitlin Elizabeth Anderson
BOB, BY GENE ANDERSON
PATRICIA MARLENE GOODWIN
APRIL LYNN ANDERSON
BOB, BY JOE ANDERSON
JOHN DAVID ANDERSON
MARGARET ANDERSON
ROSA IRMA HALLIDAY
ARMANDO OCHOA
EDUARDO OCHOA
BRAD JOSEPH HALLIDAY
CHERYL ATWELL
ERIN RIEDEL
MARK BAKER
MARK DAVID BAKER

TAYLOR GENOVESE
REBECCA E. BAKER
CHRISTOPHER BALDRIDGE
E.B., by and through his next friend
Christopher Baldridge
L.B., by and through his next friend
Christopher Baldridge
S.B., by and through her next friend
Christopher Baldridge
JESSIE BALDRIDGE
VIRGINIA NEWSOM
KYLE BALDUF
SHANNON DENISE COLLINS
CINDY JEANNE LOHMAN
GARY EDWARD LOHMAN
APRIL ANGEL BAYS
TIMOTHY LEE BAYS
BRENDA GRINER
LINDSAY REDOUTEY
ANGELA KAHLER
JAMES BELL
PAMELA E. ALEXANDER BELL
LONDON JACINDA BELL
ANDREA ROE
SCOTT BENNEDSEN
TRACY BENNEDSEN
JAMIE JOHANNA COATES
FREDERICK C. BENSON
BEVERLY MILLS
BETHANY ANN BENTON
GINA BERISFORD
M.B., by and through her next friend
Gina Berisford
SHELLEY GUTHRIE
JANE BERRETTINI
VINCENT BERRETTINI
CHARLOTTE ALLEN
AUSTIN NELAMS

MATTHEW ALLEN
JULIE BESSA
BRYANA ELYSE BESSA
JOEL D. BESSA
DONNA BLAIR
DALLAS BRYANT
GEORGIA PRIEST
CHARLES EDWARD BLANEY
DIANNE BELK MASSEY
CARLEY BLANEY
CARLENE CROSS
MICAEL D. GAUGER
CARISE MARTINDALE
MARY BORDER
KATHERINE ABREU-BORDER
DELAYNIE K. PEEK
JAMES MICHAEL BOUCHER JR.
JAMES BOUCHER SR.
KIMBERLY BOUCHER
BRITANY BOUCHER
MICHAEL BOWEN
FRANCISCO JAVIER BRISEÑO
GUTIERREZ
LUIS BRISEÑO ALVAREZ
SUSAN BRODEUR
D.L.B., by and through his next friend
Susan Brodeur
ELIZABETH L. BRODEUR
JOYCE A. BRODEUR
LAWRENCE A. BRODEUR
DAVID BROSTROM
MARY JO BROSTROM
BLAKE D. BROSTROM
BARBARA BROWN
HAROLD BROWN SR.
REGINA BROWN
PAULA RICH
RICHARD G. BRUNKHORST
JANICE HARRIMAN BRYANT
S.L.B., by and through his next friend

Janice Harriman Bryant
WILLIAM MICHAEL BURLEY
TAMMY OLMSTEAD
MICHAEL COLLINS
DAN OLMSTEAD
BRIGETTE PETERSON
T.C., by and through his next friend
Brigette Peterson
ANDREW BOWER
F.S., by and through her next friend
Brigette Peterson
JAMES REGINALD CAMPBELL
MARIA CARDOZA
RAMIRO CARDOZA SR.
RAMIRO CARDOZA JR.
WRAYJEAN CARNES
AMANDA NICOLE MANASRA
JEFF CARON
CASSANDRA CARON
KAREN CARON
SUMER J. ROBERTS
RICHARD ALLEN CAULEY
JON CENTANNI
GLENN CHISHOLM
KARMA CHISHOLM
DONNA BALL
MICHAEL CHRISTIAN
MICHAEL AARON CHRISTIAN
KEYKO D. CLARK
CORTEIZE CLARK
PRECIOUS CLARK
CLEVELAND DAVIS
JONATHAN CLEARY
APRIL CLEARY
KIM SOLA
AIDAN CLEAVER
COLLIN CLEAVER
ANTOINETTE MARY COFFLAND
DAVID LEE COFFLAND
LAURIE ANN BARTLETT

Attach.2

KAREN ANN BRESNAHAN
DAVID LEE COFFLAND JR.
LYNN MARIE COFFLAND
AMBER DAWN MORELAND
TRENTON DEAN COMBS
HALLIE MAY COMBS
HOLLY CONRAD
B.C., by and through his next friend
Holly Conrad
KENNETH COTTLE
KIM B. COX
SHARON J. COX
SHANNON BUTLER
HANNAH COX
ROSS COX
NICOLE COX
A.C., by and through his next friend
Ross Cox
BRENNAN COX
H.C., by and through her next friend
Ross Cox
PEYTON COONEY
DAVID AARON CROW
CHERYL M. CULBRETH
WALTER L. CULBRETH
JAMES FARRIS CULLINS JR.
COOPER HENRY PIKE CULLINS
DONAVAN KURT SCHILLING
CULLINS
BARBARA SCHILLING
LAVETTE CURRY
NIKI MARTIN
PATRICIA DAHL
ANGEL DAHL
MARCUS DANDREA
N.D., by and through her next friend
Marcus Dandrea
LEANORA DANDREA
MARK WILLIAM DANDREA
HOPE DANDREA

I.D., by and through his next friend
Leanora Dandrea
BENJAMIN DANDREA
GABRIEL DANDREA
HANNAH DANDREA
JOSHUA DANDREA
SAMUEL DANDREA
JAMES L. DANIELS
LUCAS DANIELS
SOPHIE DANIELS
ANTHONY D'AUGUSTINE
PATRICIA D'AUGUSTINE
JENNIFER D'AUGUSTINE
NICOLE D'AUGUSTINE
MICHELE KULESA
TRACY LEE CARRICO
TIMOTHY DAVIS
STEPHANIE FRANCES BOVA
HELENA DAVIS
C.D., by and through his next friend
Helena Davis
EVA FARR-WALLACE
CALVIN D. JAMISON
ATARAH WRIGHT
DON DAY
KATHY DAY
ROLANDO DE LA ROSA
HELEN DEPRIMO
JOSEPH DEPRIMO
JODI CALABRO
DANIELLE FEDIW
TEDDI DEYOUNG
LORI DEYSIE
ERISA DEYSIE
SIDNEE DEYSIE
PATRICIA ELSNER
KELSEY THOMAS
MARK ELSNER
JACQUELINE ALLEN
MARK ANTHONY ELSNER

Attach.3

KELLI-JO DODGE
B.C.D., by and through his next friend
Kelli-Jo Dodge
P.A.D., by and through her next
friend Kelli-Jo Dodge
JULIE SCHROCK
RYAN DONAHUE
CHANDLER SCHROCK
TAYLOR SCHROCK
ROBERT L. DUNNING, individually
and as representative for the estate of
TOMOE DUNNING
JOY COY
LISA MURAWSKI-DUPONT
MARK P. DUPONT
ERICH ELLIS
JOELLE R. ELLIS
JOHN F. ELLIS
JAMES EARL ELLIS
BRIAN EDWARD ELLIS
JULIE ANN SANDIFER
VANESSA MARIE ANZURES
VICTOR RAYMOND ELLIS
DENNIS JOHN ELM
DONNA LEE ELM
CATHERINE ELM BOATWRIGHT
MARGARET ELM CAMPBELL
MATTHEW ELM
CHRISTINE RANGEL
KRISTEN A. ELWELL
ELISE M. ELWELL
N.B.E., by and through his next friend
Kristen A. Elwell
SUSAN BURKHARD
CHARLES ESSEX
MARION RUTH HOPKINS
L.D., by and through his next friend
Britani Lee
JERRY RANDALL EVANS SR.
MARTHA ANN EVANS

LARISSA ANN BARNHART
BRITTANY EVANS
CRYSTAL NICOLE EVANS
JONATHAN DEWAYNE ROGERS
JOHN EWY
JOHN L. FANT
DAVID FINGAR
RHONDA G. FINGAR
ANDREA DIETZ
BUFORD JEREMIAH FINGAR
DONALD JOSHUA FINGAR
GERALD W. FINLEY
JOHN M. FINLEY
JOSHUA M. FINLEY
JENNIFER M. LEFORS
STEPHANIE FREEMAN
KATIE C. FREEMAN
K.M.F., by and through her next
friend Katie C. Freeman
W.D.F., by and through his next
friend Katie C. Freeman
GWENDOLYN FRENCH
LAQUITTA FRENCH
LOUELLA E. FRISON
LESLY YOHANA GARCIA
MARICRUZ GARCIA
VELASQUEZ
VICTOR GARCIA
RAMSSES GARCIA
MARIA L. AVNERI
EDUARDO G. GARCIA
JACOB AVNERI
JOSEPH D. GARRISON
JUDITH ROWE GENTZ
JOANNA GILBERT
PATRICIA GOINS
PAUL EDWARD GOINS III
EMMITT DWAYNE BURNS
JANICE CARUSO
DANA RAINEY

Attach.4

JOHN WAYNE GOLDSMITH
LORIE GOLDSMITH
ANN L. GOULD
JAMES A. GOULD
JULIANNA SYMKOWIAK
JAMES A. GRADY
JAMES MICHAEL GRADY
HASSON GRANADO
ALMUTH CORNELIUS GREEN JR.
PATRICIA C. GREEN
SUNI CHABROW
KRISTIN CARACCIOLO
PAIGE ERLANGER
LINDA K. GRIECO
RALPH GRIECO
JENNIFER GRIECO BURCH
MATTHEW GRIFFIN
SHAWN PATRICK GRIFFIN
SHEILA RISTAINO
DANIEL GRIFFIN
CELESTINA GROCHOWIAK
D.G., by and through his next friend
Celestina Grochowiak
SOCCORO GROSS PANIAGUA
CARLOS BENJAMIN GROSS RIOS
SR.
CARLOS BENJAMIN GROSS
PANIAGUA
FELICIA GROSS PANIAGUA
LOWELL HANSON JR.
MEGAN KATHLEEN DOHN
CYNTHIA HANSON
BRIAN HARPER
SORAINYA HARRIS
TENNYSON CHARLES HARRIS
TIFFANY DOTSON
ASHLEY MICHELLE HARRIS
CHRISTOPHER WAYNE
JOHNSON
DAVID L. PARKER

FELICIA ANN HARRIS
MICHAEL RUFUS II
STEPHANIE RUFUS
RUTH M. HARTON
ROBIN HEFNER
BRANDON DALE HEFNER
JESSICA MEAGAN HEFNER
JAMES HENDERSON
ALEX HENIGAN
TODD MCCLAIN HENIGAN
JOAN THELMA HENSLEY
TERRY L. HENSLEY
DON HERNANDEZ
JESSIE HERNANDEZ
ANDREA HIDALGO
JORGE HIDALGO
ROBERT A. BIRD
MARY HILTON
JEANINE HILTON
DOMINIC GIACCHI
KEVIN HONAKER
TRISTYN ANTHONY VINSON-
HOSFORD
JENNA VANOSDALE
BART LARUE HOWARD
CONSTANCE LOUISE HOWARD
ALEXANDER JAMES HOWARD
OLIVIA MARIE HOWARD
KRISTINE ANNE ZITNY
ERIC M. HUNTER
KENNA HUNTER
J.H., by and through his next friend
Kenna Hunter
K.H., by and through her next friend
Kenna Hunter
JESUS INFANTE
JESSICA INFANTE
JUAN INFANTE
MICHAEL K. INGRAM SR.
JULIE INGRAM

Attach.5

CHRISTAL A. THOMAS-KARIKER
JEREMY JACKSON
LARRY JACKSON
EDWARD KARIKER
PAUL ELMER JAYNE
SHERRY A. SKEENS
ADAM MATTHEW JAYNE
GARRETT A. SKEENS
TRENT LORNE SKEENS
Z.R.S., by and through her next friend
Kent Alan Skeens
KENT ALAN SKEENS
DENNIS JOHNSON
TERI JOHNSON
CHERYL JOHNSON
FREDDA LYNN JONES
J.J., by and through his next friend
Fredda Lynn Jones
KENDERRICK JONES
I'KEMEYON CROW
NICOLE KAMALESON
BARCLAY KAMALESON
CADE KAMALESON
CEDRIC PAUL KAMALESON
SUNDERRAJ MARK
KAMALESON
ANNGEL JOY NORKIST
HART NORKIST
AUJZA NORKIST
WILLIAM NEWNHAM
MICHAEL KISSELOFF SR.
MILAGROS KISSELOFF
EDWARD KLEIN
AB, BY KNAPP-MORRIS
K.K., by and through her next friend
Ab, by Knapp-Morris
BRANDON KORONA
GINGER KUTSCHBACH
BRIAN LAMBKA
NATASHA BUCHANAN

DOUGLAS A. LANDPHAIR
JEAN S. LANDPHAIR
MEREDITH LANDPHAIR
MIRANDA LANDRUM
B.R.L., by and through her next friend
Miranda Landrum
G.B.L., by and through his next friend
Miranda Landrum
JAMES R. LANDRUM
JANET LANDRUM
CRAIG LEICHT
SHIRLY A. LEICHT
ELIZABETH C. LEICHT
JESSE H. LEICHT
JONATHAN LEICHT
MARY ROSE LEICHT
SARAH GRACE LEICHT
ROBERT ROLAND LEMBKE
JARED SATOSHI LEMON
K.E.L., by and through her next friend
Jared Satoshi Lemon
FRANK L. LEMON
JACKIE L. LEMON
BENJAMIN LEMON
MATTHEW C. S. LEMON
NATHAN KENJI LEMON
MARTHA LOONEY
MARTIN E. MADDEN
MARTIN P. MADDEN
LINDSEY R. MADDEN
PAMELA J. MADDEN
KYLE MALIN
ALICIA MALIN
C.M., by and through his next friend
Alicia Malin
K.M., by and through his next friend
Alicia Malin
TAYLOR MARTA
KRISTIE SURPRENANT
BOB SURPRENANT

BRIAN M. MARTIN
JULIE K. MARTIN
CATHERINE G. MARTIN
ELIZABETH A. MARTIN
THOMAS PIERCE MAYS
ALYSON OVERMAN RODGERS
CODY CHEYENNE MAYS
TAMMY RENEE MAYS
ANNIE L. MCBRIDE
CHESTER R. MCBRIDE SR.
JOYCE PATRICIA PAULSEN
SONJA MCDANIEL
MATTHEW MCDANIEL
CHARLETTE GILBERT
CHARMAINE RENEE GILBERT
JORDAN GILBERT
JASMINE THOMAS
KATHLEEN MCEVOY
MICHELLE ROSE MCEVOY
PATRICK CHARLES MCEVOY
JANICE H. PROCTOR
SYLVIA MCGEE
THOMAS MCGEE
COREY MCGEE
AIMEE WOOD
J.M., by and through her next friend
Aimee Wood
BARBARA HANKE
GREGORY MCLEOD
JACQUELINE MCLEOD
JUSTIN MCLEOD
SHANNON K. MCNULTY
JOHN MEANS
NICHOLAS D. MENDES
JEREMY J. METZGER
SARAH BETH MILLER MORGAN
TERRY MITTLER
CARMELITA D. FERNANDO
ANDREA KESSLER
JOSE ALBERTO MORGADO

ERIC MORGADO
SUSAN MORRISON
MIRIAM A. MULLEN
WILLIAM J. MULLEN
CATHERINE MULLINS
THOMAS MULLINS
BETHANY ROSE MULLINS
RANDALL
CHET MURACH
WILLIAM ANTHONY MURACH
AMANDA NEWMAN
MICHELLE M. NICHOLAS
CYNTHIA NICHOLS
DOUGLAS NICHOLS
BRANDON NICHOLS
BECKY S. POOCK
ROGER POOCK
PATRICIA A. NICOL
ROLAND N. NICOL
ALAINA NICOL
ROLAND J. NICOL
THOMAS PRIOLO
SUSAN NOVAK
CARMEN LOUISE
O'LEARY,JULIA OTT
CHRISTOPHER ALEXANDER
PALMATEER
MARJORIE VAIL
ELMA GARZA PALOMAREZ
CANDIDO PALOMAREZ III
OMAR PALOMAREZ
RENE PALOMAREZ
GARLAND PARSONS
CATHY PARSONS
CHELSEY PELLERIN
ASHLEY PETERS
G.R.P., by and through his next friend
Ashley Peters
DEBORAH JEAN PETERS
DENNIS W. PETERS

Attach.7

CHRISTINE H. PHILLIPS
S.N.P., by and through her next friend
Christine H. Phillips
GLENDA WILLARD
RANEE MASSONI
JORDAN PLUNK
JUSTIN T. PLUNK
JANIE RABALAIS GONCALVES
AARON WILLIAM PRESCOTT
JACOB RICHARD PRESCOTT
JOSHUA MICHAEL PRESCOTT
ALBERT W. PUCINO JR.
KATHRYN M. PUCINO
LISA M. HAGLOF
MELISSA A. PUCINO
CYNTHIA L. PYEATT
LON SCOTT PYEATT
EMILY SMALLEY
LONA L. GAMBONE
RENDA RIGGINS
ANDREA N. RATZLAFF
HEATHER L. REED
DAVID REED
DOLORES A. REED
SCOTT REGELIN
SHIRENE REGELIN
JOY L. RETMIER
STEVEN C. RETMIER
MASON D. RETMIER
MATTHEW S. RETMIER
CASSIE MARIE RICHARDSON
DONNA RIMER
JAMES RIMER
RANDY RISTAU
HALIE RISTAU
SUZANNE RISTAU
CHRISTOPHER POWERS
E.N.R., by and through his next friend
Jannett Cecilia Roberts
MIGUEL ANGEL NATHANIEL

ROBERTS
MIRIATLIZ ROBERTS
REGINA BYTHER
CESAR ROBLES
YOLANDA ROBLES
LESLIE RODRIGUEZ
RAVEN GEORGE
RODOLFO RODRIGUEZ SR.
RODZIE EFREN RODRIGUEZ
ANGELA RITA MARIE ROGERS
BARBARA A. ROLAND
MARK K. ROLAND
ERICA M. ROLAND
LIESELOTTE R. ROLDAN
ANGEL R. ROLDAN
MATTHIAS P. ROLDAN
SAMANTHA G. ROLDAN
NANCY ROUGLE
DONNA MAE ROUSH
ROBERT GRAHAM ROUSH JR.
ALEX JASON ROZANSKI
COLLEEN WHIPPLE
PHILLIP J. SCHMIDT
BRANDON TYLER SCHMIDT
THOMAS SCHWALLIE
DAVID SHANFIELD
PAMELA SHANFIELD
SYDNEY SHANFIELD
REUBEN ERIC SHARP
SHERRY JEAN PEPPER
GEORGANNE M. SIERCKS
GAGE SIERCKS
G.S., by and through his next friend
Georganne M. Siercks
JACQUELINE B. THOMPSON
RANDOLPH D. THOMPSON
BRITTENY BULLOCK
ANDREW SLACK
JESSE SLACK
JONATHAN H. SLACK

Attach.8

LAUREN SLACK
ROSE ANN CROSSMAN
JESSICA COOK
MARY BETH SMEDINGHOFF
THOMAS SMEDINGHOFF
JAMIE SMITH
ROBERT EARL SMITH
THELMA SMITH
ANNETTE PARRISH
DEANNDREA LUNEY
DEIONTAY WELCH
KIM SMITH
SARAH NGIRAIBIOCHEL
BENJIMAN SMITH
DELORIS SNOW
MIRACLE BURTON
DAMEN SNOW
DINEEN SNYDER
EDWARD SNYDER
DAMIEN EDWARD SNYDER
LARRY MICHAEL SOLESBEE
GUSTAVO ALFONSO SOLTERO
ADRIAN CARRILLO SOLTERO
CHRISSY PRADO
A.M.S., by and through her next
friend Chrissy Prado
C.S.S., by and through her next friend
Chrissy Prado
OWEN M. SOUTHWORTH
LOGAN M. SOUTHWORTH
KIMBERLY SOUTHWORTH
ROBERT SOUTHWORTH
CHRISTINA NIKOLE GUERRERO
MICHAEL SOUTHWORTH
GARRY LEE SPARKS
JAN MARIE HURNBLAD SPARKS
ERIK SPARKS
ZACHARY DOUGLAS SPARKS
JANE SPARKS
TINA LYNN SEEKINS

MITCHELL L. STAMBAUGH
RACHEL HUMPF
DENNIS STEFFEY
HEATHER JACKSON
DAVID HUMPF
LAUNA LEE CHAVEZ
CHARLES LYNN STILES
KENNETH J. STILES
NATALIE MICHELLE
SCHOENING
CECILIA STILES
BILLY MICHAEL STOUT
MELISSA KEENER
JANICE COCHRAN YORK
FRANKLIN LITTLE
GARRETT LAYNE FUNK
JILL MYERS
ALYSSA MARIE STYER
JOHN ANDERSON HALL
HARRIET SUTTON
JEFFREY SCOTT KUYKENDALL
LARRY KUYKENDALL
CLIFFORD TAYLOR
EVELYN TAYLOR
DANICA THOMAS
L.T., by and through her next friend
Danica Thomas
JULIE MAGANA
RYAN GREGORY TIMONEY
DIANE TIMONEY
GREGORY TIMONEY
ESTA SMITH
JOE TORIAN
EMILY TORIAN
NATHAN EWELL TORIAN
JIMMY SMITH
NANCY M. TRIMBLE
TIMOTHY M. TRIMBLE
KEVIN TRIMBLE
LYDA NIESHE

DANA ATLAS
S.A.A., by and through her next
friend Dana Atlas
S.R.A., by and through her next friend
Dana Atlas
JOHANNES ATLAS
JOSE ANTONIO VAZQUEZ SR.
JANICE VAZQUEZ
MICHAEL VERARDO
TAMARA ANNE BOYETT
TERRY LYNN BOYETT
DARRYL WALLACE
HARVEY LANE WALLS
STEVEN WALLS SR.
DANNY VIETTI
SARAH MOSCHLER WALTON
ROBERT WATSON JR.
BARRY WELCH
LORRIA WELCH
JOHN M. WEST
MARCIA M. WEST
KRISTINE WILLIS
ANTHONY CURTIS WHITE
ANTHONY EVAN WHITE
ZACHARY LUKE WHITE
MARK ANTHONY WHITE
MARTHA CAROLINA SMITH
THOMAS ELMER WICKLIFF
MICHELLE CAROLINA ROTELLI
CLINT COLEMAN WILDES
JAMIE E. SURLES
CLARENCE WILLIAMS JR.
TALISA SHERVON WILLIAMS
SAMANTHA SHERVON
WILLIAMS
ABRILL RENEE WILLIAMS
LEON WILLIAMSON III
SYBIL B. WILLIAMSON
CHERYL SPIVEY
CORBIN WAYNE HUNT

REGINA MICHELE WRIGHT
F.S., by and through her next friend
Ashley Rose Serocki
DAWN MARIE PATTEE
JALISA MARIE HAMMOND
KRISTEN COLLEEN WRIGHT
RUSSELL GLENN YANNEY
ROBYN YOUNG
SHARON K. ZAEHRINGER
NICOLE R. SCOTT
MICHELLE MARIE ZIMMERMAN
CHRIS LEE ZIMMERMAN
BAILY ZIMMERMAN
AMANDA BOONE
AMY ALLEN
DANIEL ALLEN
JASMIN BAYS
CHRISTOPHER BERRETTINI
NELLO BERRETTINI
MICHAEL BOGAR
JASE BROSTROM
FRANK BRYANT SR.
PATRICIA BRYANT
LINDA REYNOLDS
CORDARO CLARK
HEATHER DANIELS
JAMES ELLIS
BRIAN FREEMAN
STEVEN M. GENTZ
JESSICA BENSON
NICOLE GOLDSMITH
ALEXIS J. QUISENBERRY
KEVIN GRADY
JESSE GREEN
CAROL GRIFFIN
ANGELA HARPER
HOLLY HARPE
JOSEPH HULSEY JR.
CINDY HENDERSON
ATHENA GORDON

GLORIA HENSLEY
A.L.H., by and through her next
friend Gloria Hensley
E.M.H., by and through her next
friend Gloria Hensley
N.R.H., by and through her next
friend Gloria Hensley
MICHAELA HENSLEY
BRENT ROBINSON
CHRISTEN HOLLEY
S.G.C.H., by and through her next
friend Christen Holley
CHARISSA DELGIORNO
ALYSSA SHERIDAN
ANDREW SHERIDAN
KATHLEEN LYNN ALEXANDER
DANIEL OWEN HUGHES
PATRICIA HUGHES
BETTY BLACK
JOEY HUNTER
JOEY HUNTER II
NICHOLAS ROBINSON IV
Ayzia J. Jayne
MARIUS R. WASHINGTON
SHEILA MCCARY
JASMINE JONES
ALEKSANDR KISSELOFF
B.T.K., by and through his next friend
Ginger Kutschbach
JORDAN LAMBKA
L.A.E.L.B., by and through her next
friend Natasha Buchanan
S.L.L.B., by and through her next
friend Natasha Buchanan
MASHELLE LEMBKE
ALEXIS MARIE LEMBKE
T.N.L., by and through his next friend
Mashelle Lembke
KARYN SUE STONE
LAWRENCE MARTA

ALEXANDRA MCCLINTOCK
D.C.M., by and through his next
friend Alexandra McClintock
GEORGE MCCLINTOCK III
LUANN VARNEY
CRISTINE MITTLER
JOYCE TURNER
MISTY BARCLAY
ALEXANDER MITTLER
ANNA BANZER
SOFIA KESSLER
CONNOR ALEXIAN PLADECK-
MORGADO
NANCY MULLEN
DONALD NEWMAN SR.
MARY HAMMERBACHER-
NICHOLS
MONTE NICHOLS
NICOLE ROBLES
JESSICA CRUZ
MICHELLE HOCK
SHANNON FENTON
CARLOS CRUZ
JOEL CRUZ
N.W., by and through her next friend
Regina Byther
ROBERT ROUSH III
NATALIE SCHMIDT
A.L.S., by and through his next friend
Natalie Schmidt
LEEANN SCHMIDT
SARAH SCHWALLIE
ANGELA PRESTON
A.P., by and through his next friend
Angela Preston
GUS PRESTON
JOAN SMEDINGHOFF
MARK SMEDINGHOFF
REGINA SMEDINGHOFF
STEVEN FLOWERS JR.

CRAIG SMITH
NATASHA SNYDER
TRINA SOLESBEE
ANDREA STEFFEY
A.G.S., by and through her next
friend Andrea Steffey
CHARLES STILES II
MICHAEL STOUT
MICHAEL STRATTON
STEVEN STRATTON
DEBORAH YOUNG
ERIN GOSS
SUMMER SUTTON
TRECIA BROCK HOOD
WENDY SHEDD
FREDDIE SUTTON
KYLE TAYLOR
ROSANNA TRIMBLE
MICAELA TRIMBLE
STEFFANI TRIMBLE
LEAH TURNER
JOSE VAZQUEZ JR.
TIFFANY WALLACE
CHASE WALLACE
LISA HICKS
MICHAEL SKOUFALOS
ERIC ALLEN VIETTI
ZACKARY WELCH
LAURA WHITE
CHARLES ADKINS
SHEILA GOOD
VELVET ADKINS
VERONICA ADKINSON
JOSE ALEMAN
STEPHANIE HAGER
ROBERT ANDREWS
SONDRA ANDREWS
JONATHAN ASHLEY III
TAMMIE ASHLEY
JONATHAN ASHLEY IV

JORDAN ASHLEY
SUZANNA AUSBORN
MITCHELL MALOY
SUMMER MALOY
ENJOLIE BATES
B.B., by and through his next friend
Enjolie Bates
R.B., by and through her next friend
Enjolie Bates
MARLINE TULLY
CHRISTOPHER BILLMYER
CHERYL BILLMYER
JAMES BILLMYER
MAGGIE BILYEU
KIMBERLY BLAMIRES
D.L.B., by and through her next
friend Kimberly Blamires
KALLI BLAMIRES
CRAIG BLAMIRES
SANDRA BLAMIRES
BEAU BLAMIRES
ERIC BLAMIRES
ETHAN BLAMIRES
NEIL BLAMIRES
JULIE MCGRAW
ERNEST BROWN II
JIM ARTHUR JACOBS
GLADYS VEREEN
CHRISTOPHER BAPTIST
DOMINIC JACOBS
JIM AUGUSTINO JACOBS
LAGUANDA JACOBS
MICHAELA JEANNE TAYLOR
CYNTHIA CAMPBELL
ARTHUR CAMPBELL
AUDREY CAMPBELL
TINA CAMPBELL
TIMOTHY NORMAN CARNER
BRITTANI CARNER
T.M.C., by and through his next

Attach.12

friend Timothy Carner
WRENITA RANDALL
EDIENA MCGEE
DEAN COLEMAN
SAMANTHA MCNAMARA
BRENDA DAEHLING
KIRK DAEHLING
ADAM DAEHLING
KAYLA MARIE DAEHLING
ROBERT DARROUGH
JUDITH DARROUGH
RICHARD DENNIS
MARIA MIX
AMANDA DENNIS-SILVA
ANGELICA MIX
MARC DERVAES
JOSEPH DESLAURIERS
LISA DESLAURIERS
ALBERTO DIAZ
KAYLA DIAZ
N.J.D., by and through her next friend
Kayla Diaz
N.J.A.D., by and through his next
friend Kayla Diaz
FRANCES DIAZ
MAXIMO DIAZ
ANTHONY DIAZ
MATTHEW DIAZ
ROBERT DOVE
ANTOINETTE DRAKULICH
JOSEPH DRAKULICH
THOMAS DRAKULICH
DANA DRAKULICH-KING
J.G.A., by and through his next friend
Jamie Allison
KYLE EDGERTON
C.F., by and through his next friend
Stephanie Fisher
K.F., by and through his next friend
Stephanie Fisher

STEPHANIE FISHER
THOMAS FOGARTY
ROBERT LENTZ
LISA LEE FREEMAN
VIRGINIA WIEDOWER
PAUL GIRE JR.
KIRK GOLLNITZ
TYLER GOLLNITZ
CEDRIC F. GORDON
CONCHETTA DIAZ
CEDRIC D. GORDON SR.
ADRIAN SHERROD
TRAVIS GREEN
JULIE GREEN
ALEXANDRIA GREEN
A.G., by and through her next friend
Travis Green
E.G., by and through her next friend
Travis Green
T.G., by and through her next friend
Travis Green
GLENDA GREEN
COL, BY ANDERSON
HAYLEY ANDERSON
CRAIG GROSS
NATALIE GROSS
TIMOTHY HAGEN
DEBRA L. HAGEN
LANCE TIMOTHY HAGEN
RYAN SCOTT HAGEN
SAMUEL ALAN HAGEN
LYNNE FARMER
JERRY HARDISON
JUSTINA HARDISON
DAUS HEMPKER
DENNIS HEMPKER
JEWELYN HEMPKER
CONNIE HERZEL
STEPHANIE HAYHURST
MAREN HESLA

LARRY D. HORNS
TAMARA HORNS
TIFFANY LOUISE HORNS
SONGMI KIETZMANN
BENJAMIN HORSLEY
JOHN HORSLEY
HOLLY INGRAM
C.A.I., by and through her next friend
Holly Ingram
SHEL, BY IUBELT
V.I., by and through her next friend
Shel, by Iubelt
MICHAEL IUBELT
CHARLOTTE LOQUASTO
J.A.L., by and through his next friend
Charlotte Loquasto
DARIUS JOHNSON
JUDY B. CUSACK
KIA CUSACK
BILLIE SHOTLOW
MICHAEL SHOTLOW
LACEY JORDAN
T.J.J., by and through his next friend
Lacey Jordan
ALISON POHN
JOHN C. MCCARTHY
NORMAN KARCH
CAMERON SADE KENNEDY
A.D.R.K.-Y., by and through her next
friend Cameron Sade Kennedy
K.A.K., by and through her next
friend Cameron Sade Kennedy
T.M.S., by and through his next friend
Cameron Sade Kennedy
KEVIN KING
STEPHANIE MILLER
GRACE AUBREY KREISCHER
C.L.K., by and through his next friend
Grace Kreischer
BRIANNE BARLOW

JASON BARLOW
ELLIOT LANDER
HOLLAN LANDER
T.L., by and through her next friend
Elliot Lander
GREGORY N. LANDER
KIMBER MORIN
ERIC LANDER
CATHERYN SCHOENFARBER
DAVID LAU
HAMIDE LAU
K.L., by and through his next friend
David Lau
M.L., by and through her next friend
David Lau
ALEXANDER LAU
VIVIAN PERRY
HOLLY ABRAHAM
LEROY LAU JR.
MICHELLE LEE
RAUSCHENBERGER
JAMMIE SMITH
TODD LOVE
ERIC LUND
KEVIN MCCLOSKEY
CLARENCE METCALF
KIMBERLY METCALF
THERESA KARLSON
KIARA PEREZ DEL VALLE
RENES PEREZ, individually and as
representative of the estate of
GLADYS DEL VALLE
MONTANEZ
SHUSHAWNDRA GREGOIRE
J.D.G., by and through his next friend
ShuShawndra Gregoire
JOHN GREGOIRE SR.
L.R.G., by and through her next
friend John Gregoire Sr.
HUGH NEENAN

Attach.14

KATHLEEN NEENAN
TIMOTHY NEENAN
LESA NEENAN
GABRIEL NEGRON
MARTA TORRES
JOSE NEGRON
MARIBEL NEGRON
MARVIN NEGRON
WILLIAM NEVINS
RYAN NEWELL
BRUCE NICHOLS
MOLLY G. NICHOLS
JEANNE NICHOLS
RAUL OLIVARES JR.
LESLEY OLIVARES
D.R.M., by and through her next
friend Lesley Olivares
ADOLF OLIVAS
JACQUELINE O'NEILL,
individually and for the estate of
JONATHAN O'NEILL
ROBERT O'NEILL
BRIAN O'NEILL
KAITLYN O'NEILL
MATTHEW O'NEILL
JASON PACHECO
ANNALEIGH PACHECO
PEGGY PAGAN
ROBERT PAGAN SR.
ROBERT PAGAN JR.
NANCY WILSON
DEBRA PEREZ
ROBIN AKERS
TRACY HERRING
ADAN PEREZ
ANTHONY PEREZ
NICHOLAS PEREZ
JULIANNE GOOD PERRY
G.W.P., by and through his next
friend Julianne Perry

L.R.P., by and through her next friend
Julianne Perry
KATHLEEN PERRY
STEWART LAMAR PERRY
A.T.P., by and through her next friend
Stewart Perry
JACK PIERCE
KAREN PIERCE
W.P., by and through his next friend
Jack Pierce
BEVERLY PIERCE
ALEX PIERCE
CHRISTINE PIERCE
BETHANY WESLEY
IDA PITTMAN
JOHN PITTMAN SR.
DIEDRE SPENCER
A.M.P., by and through her next
friend Diedre Spencer
GAIL PROVOST
MEGHAN JANET
HOLLINGSWORTH
SARAH TIFFANY PETERSON
BRIAN PROVOST
SPENCER DANA PROVOST
GERTRUDE PROVOST
LOUIS PROVOST
JUDITH L. ASHLEY
LOUISE P. CONLON
MARYJANE G. MEDEIROS
JOHN A. PROVOST
PAUL PROVOST
SCOTT PETER PROVOST
BLAINE A. REDDING
SUMMER DUNN
HANNAH MASON
MALLORY WILLIAMS
CHARLOTTE ANN REEVES
VICTORIA JANE REEVES
JOYCE ANN TULLOCH

Attach.15

CYNTHIA RICHMOND
MICHELLE RILEY
RODNEY RILEY
DANIEL ROBINSON
CHRISTOPHER ROSEBROCK
R.A.R., by and through his next friend
Caroline Rudzinski
PAUL SCHAUS
TAMMIE SCHOONHOVEN
A.M.S., by and through her next
friend Tammie Schoonhoven
A.R.S., by and through her next friend
Tammie Schoonhoven
DEBORAH SCHOONHOVEN
CHRISTOPHER SCHOONHOVEN
SHEESHTA MARIE PERRY
ROBERT SCHULTE
SUSIE SCHULTE
TODD SCHULTE
BETSY SCHULTZ
DUANE SCHULTZ
MICHAEL SOUFRINE
ANNETTE JANINE SPEHAR
PATRICK SPEHAR
LISA MARTINUSEN
MARIE SENTINA MIELKE
JACOB LOUIS SPEHAR
LUKE SPEHAR
MEGAN STEPHENS
S.M.S., by and through her next
friend Megan Stephens
CHARLES STRANGE
CARLY ELIZABETH STRANGE
CHARLES STRANGE III
KATELYN STRANGE
CRYSTAL DELEO
TODD TAYLOR
MACKENZIE BERGER
FREDERICK TOLON
BRITTANY TOWNSEND

CATHERINE VAUGHN KRYZDA
C.C.V., by and through her next
friend Catherine Vaughn Kryzda
R.C.V., by and through his next friend
Catherine Vaughn Kryzda
HORTENSE VICKERS
K.E.F.V., by and through her next
friend Hortense Vickers
K.M.G.V., by and through her next
friend Hortense Vickers
KAIAKAKU'UIKALA'IOKEALOH
A NOAH VICKERS
MARY VICKERS
ROBERT VICKERS SR.
MARK VICKERS
ROBERT VICKERS JR.
MICHELLE YARBOROUGH
DONN WEAVER
JEANNE WEAVER
DAVID WHIPPLE
KIMBERLEY A. WHIPPLE
BRIAN CLYBURN
SEAN WHIPPLE
JEFFREY WHITE SR.
PAULA WHITE
KYLE WHITE
MICHAEL WHITE
FELICIA WILLIAMS
DERLYSA WILLIAMS
VANECIA MITCHELL
VICTORIA BOYD
DENISE WILSON
BEVERLY WISNIEWSKI
CHESTER WISNIEWSKI JR.
CRAIG STANLEY WISNIEWSKI
MATTHEW WALTER
WISNIEWSKI
BRUCE YELNER
JOHN ZELKO III
KATHY GAYLE LAY, solely as

representative of the Estate of KURT
ZWILLING
ALEXANDER ZWILLING
KAREN SUZANNE ZELKO
JENNIFER MARIE ZELKO
TRENT DONALD ZELKO
JOHN R. ZELKO JR.
CLIFFORD E. AUSBORN
ALICE FAYE AUSBORN
TODD BRODEUR
AMANDA BRODEUR
BROTHERTON
ROBERT RIVERA
DAVID EDWARD BEAN
TERESA BERNSTEIN
AMBER JEAN ROGERS
T.M.C., by and through her next
friend Amber Jean Rogers
G.J.C., by and through his next friend
Amber Jean Rogers
JAMES FRANKLIN BALL
LAUREN ASHLEY CULBRETH
K.L.F., by and through his next friend
Robert Walter Lentz
MARY ELIZABETH RICH
ALEJANDRO OLAN GRANADO
IV
AMANDA CHRISTINE GRANADO
MARÍA DOLORES HUNTER
SADIE NICOLE HUNTER
SAGE RIVER SALADIN
BRAYDON TYLER NICHOLS
JOSEPH WILLIAM PRESCOTT
MELISSA RODRIGUEZ
DEREK RODRIGUEZ
K.R., by and through her next friend
Melissa Rodriguez
HOLLI JEAN JENSEN
BRUCE ATLAS
ADRIANNA GRETCHEN VARGO

KRISTINA NELL WEAVER
GLENN ALLEN WEAVER
KAILA CARRIER
DAVID PIEPER
**Claims Voluntarily Dismissed:**
SUSANA GRANADO
KYLE ROUSH
VANCE VICKERS
DERRICK ANTHONY DAVIS
MAKAHEA XHELILI
BRIANNA BENSON
BRUNO STOECKLI
KEVIN WILLIAMS
LUCAS GONZALES
BRETT BARRETT
GLORIA JEAN CAULEY
ALEX FRENCH
LATOYA FRENCH
EVANGELINE FERRERA
C. RICHARD LOONEY
CREIGHTON DAVID OSBORN
KADE M. OSBORN, previously a
minor identified as K.M.O., by and
through his next friend, Creighton
David Osborn
KATLYN M. OSBORN
CHRISTA L. OSBORN
MARK ROUGHTON
ISMAEL ROUGLE
ROBIN STOUT
DAWN VIETTI
PAUL VIETTI
JENNIFER LYNN WHITE
DAVID TIMOTHY WRIGHT
GLORIA HENSLEY, solely in her
representative capacity on behalf of
the estate of Nicholas C.D. Hensley
MICHAEL PLUGER
RENE PALOMAREZ, solely in his
representative capacity on behalf of

both the estate of Isaac Palomarez and
the estate of Candido Palomarez Jr.
VERONICA ADKINSON, solely in
her representative capacity on behalf
of the estate of Vinson Adkinson III

L.C.D., by and through his next
friend, Bridgett DeHoff
TERESA HARDISON
DONNA SOUFRINE
LAUREN CASTRO

### *Zambon, et al v. Islamic Republic of Iran, Ministry of Foreign Affairs*

MARK ZAMBON
KRISTIN ZAMBON
JAMES AMOS
DANIEL BROWN
KRISTINA BROWN
SAMUEL BROWN
SKYLER COLEMAN
DOMINIC DAVILA
LARRY DRAUGHN
KAYTLIN DRAUGHN
CURTIS DUARTE
SARAH PETERS-DUARTE
JOSEPH DUARTE
DOMINIC FERNANDEZ
HEIDI DEOTIS
NADIA FERNANDEZ
E.F., a minor represented by his legal
guardian, Heidi DeOtis
KENDRA GARZA
JASON GIBSON
KARA GIBSON
RUBEN GOMEZ
LINDSEY GOMEZ
DAYMIAN GOMEZ
JASON HALLETT
ADAM HARTSWICK
BRADLEY IVANCHAN
JACOB JANES
BRIAN JERGENS
TERENCE JONES
JUSTIN LANE
CRYSTAL LANE

JACOB LERNER
JOSE MARTINEZ HERNANDEZ
LISETH MARTINEZ-ARELLANO
JORDAN MAYNARD
KELLEY MAYNARD
BRIAN MEYER
JEDIDIAH MORGAN
ANNA MORGAN
BRANDON RUMBAUGH
JOSHUA SAMS
SAMUEL SHOCKLEY
DANIEL STAMPER
JOHN STEINBAUGH
KYLE STEWART
CAMERON STUART
KATY STUART
MATHEW SULLIVAN
CARLOS TORRES
JULIAN TORRES
ASHLEY TORRES
J.T., a minor represented by their
legal guardian, Ashley Torres
A.T., a minor represented by their
legal guardian, Ashley Torres
CHRISTOPHER VAN ETTEN
JESSE WATSON
CAMERON WEST
BRIAN WILLIAMS
JACK WILLIAMS
ASHLEE WILLIAMS
K.W., a minor represented by her
legal guardian, Ashlee Williams

JACK ZIMMERMAN
MEGAN ZIMMERMAN
TRAVIS GREEN
KYLE MALIN
M.F., a minor represented by her legal
guardian, Heidi DeOtis
Q.G., a minor represented by her legal
guardian, Kara Gibson
B.Z., a minor represented by his legal

guardian, Megan Zimmerman
W.Z., a minor represented by his legal
guardian, Megan Zimmerman
RACHEL HALLETT
MADISON WEST
E.W., a minor represented by her
legal guardian, Madison West
R.W., a minor represented by his legal
guardian, Madison West

### *Blunt et al v. Islamic Republic of Iran*

JONATHAN BENTON
ELIZABETH BENTON
S.B., a minor represented by their
legal guardian, Elizabeth Benton
G.B., a minor represented by their
legal guardian, Elizabeth Benton
H.B., a minor represented by their
legal guardian, Elizabeth Benton
ISAAC BLUNT
I.B. a minor represented by her legal
guardian, Isaac Blunt
CAREY DUVAL
MICHAEL FOX
ERICA FOX
G.F., a minor represented by his legal
guardian, Erica Fox
PICARDO PEREZRAMOS
DARILYN PEREZ RAMOS
B.M., a minor represented by their
legal guardian, Darilyn Perez Ramos
S.P., a minor represented by their
legal guardian, Darilyn Perez Ramos
NATHAN RIMPF
GREGORY STUBE
G.S., a minor represented by his legal
guardian, Gregory Stube
JOSHUA SUST
GUILLERMO TEJADA

SETH WAKELING
ADRIANA WAKELING
A.P., a minor represented by her legal
guardian, Darilyn Perez Ramos
JUSTIN MCLOUD
ALAINA MCLOUD
D.M., a minor represented by his legal
guardian, Alaina McLoud

# ADDENDUM

# TABLE OF CONTENTS

Page

28 U.S.C. § 1605A ............................................................................................Add.1

28 U.S.C. § 1330................................................................................................Add.6

## <u>28 U.S.C. § 1605A</u>

**§ 1605A. Terrorism exception to the jurisdictional immunity of a foreign state**

**(a) In general.**—

    **(1) No immunity.**—A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

    **(2) Claim heard.**—The court shall hear a claim under this section if—

        **(A)(i)(I)** the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act, and, subject to subclause (II), either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section; or

        **(II)** in the case of an action that is refiled under this section by reason of section 1083(c)(2)(A) of the National Defense Authorization Act for Fiscal Year 2008 or is filed under this section by reason of section 1083(c)(3) of that Act, the foreign state was designated as a state sponsor of terrorism when the original action or the related action under section 1605(a)(7) (as in effect before the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) was filed;

        **(ii)** the claimant or the victim was, at the time the act described in paragraph (1) occurred—

            **(I)** a national of the United States;

**(II)** a member of the armed forces; or

**(III)** otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment; and

**(iii)** in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration; or

**(B)** the act described in paragraph (1) is related to Case Number 1:00CV03110 (EGS) in the United States District Court for the District of Columbia.

**(b) Limitations.**—An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) not later than the latter of—

**(1)** 10 years after April 24, 1996; or

**(2)** 10 years after the date on which the cause of action arose.

**(c) Private right of action.**—A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to—

**(1)** a national of the United States,

**(2)** a member of the armed forces,

**(3)** an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or

**(4)** the legal representative of a person described in paragraph (1), (2), or (3),

for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

**(d) Additional damages.**—After an action has been brought under subsection (c), actions may also be brought for reasonably foreseeable property loss, whether insured or uninsured, third party liability, and loss claims under life and property insurance policies, by reason of the same acts on which the action under subsection (c) is based.

**(e) Special masters.**—

**(1) In general.**—The courts of the United States may appoint special masters to hear damage claims brought under this section.

**(2) Transfer of funds.** —The Attorney General shall transfer, from funds available for the program under section 1404C of the Victims of Crime Act of 1984 (42 U.S.C. 10603c),[1] to the Administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters appointed under paragraph (1). Any amount paid in compensation to any such special master shall constitute an item of court costs.

**(f) Appeal.**—In an action brought under this section, appeals from orders not conclusively ending the litigation may only be taken pursuant to section 1292(b) of this title.

**(g) Property disposition.**—

**(1) In general.**—In every action filed in a United States district court in which jurisdiction is alleged under this section, the filing of a notice of pending action

---

[1] So in original. Section 1404C of the Act was classified to 42 U.S.C.A. § 10603c prior to reclassification as 34 U.S.C.A. § 20106.

pursuant to this section, to which is attached a copy of the complaint filed in the action, shall have the effect of establishing a lien of lis pendens upon any real property or tangible personal property that is—

    **(A)** subject to attachment in aid of execution, or execution, under section 1610;

    **(B)** located within that judicial district; and

    **(C)** titled in the name of any defendant, or titled in the name of any entity controlled by any defendant if such notice contains a statement listing such controlled entity.

**(2) Notice.**—A notice of pending action pursuant to this section shall be filed by the clerk of the district court in the same manner as any pending action and shall be indexed by listing as defendants all named defendants and all entities listed as controlled by any defendant.

**(3) Enforceability.**—Liens established by reason of this subsection shall be enforceable as provided in chapter 111 of this title.

**(h) Definitions.**—For purposes of this section—

**(1)** the term "aircraft sabotage" has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation;

**(2)** the term "hostage taking" has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages;

**(3)** the term "material support or resources" has the meaning given that term in section 2339A of title 18;

**(4)** the term "armed forces" has the meaning given that term in section 101 of title 10;

**(5)** the term "national of the United States" has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));

**(6)** the term "state sponsor of terrorism" means a country the government of which the Secretary of State has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)),[2] section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371), section 40 of the Arms Export Control Act (22 U.S.C. 2780), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism; and

**(7)** the terms "torture" and "extrajudicial killing" have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note).

---

[2] Section 6(j) of the Act was classified to former 50 U.S.C.A. App. 2405(j), prior to editorial reclassification as 50 U.S.C.A. § 4605(j), and was subsequently repealed by Pub.L. 115-232, § 1766(a).

## 28 U.S.C. § 1330

**§ 1330. Actions against foreign states**

**(a)** The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

**(b)** Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

**(c)** For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605-1607 of this title.